Naumberg v. Young.

---

SIMON J. NAUMBERG AND PHILIP NETTRE v. NATHAN N. YOUNG AND THOMAS W. MORGAN.

1. The rule of evidence that, where parties have put their contract in writing, the written contract shall be the only evidence of the contract as finally concluded, and that oral testimony of what was said or done during the negotiations, will not be admitted either to contradict the written contract or to supply terms with respect to which the writing is silent, is designed to enable parties to make their written contracts the only evidence of their undertakings, and to protect themselves from the hazard of uncertain oral testimony with respect to their engagements, and is a rule indispensable to the security of contracting parties.

2. The exceptions to this rule are (1) where the written contract is incomplete, and on its face does not purport to contain the whole agreement between the parties; (2) where the parties, in negotiating the agreement which is reduced to writing, have also entered into another agreement by parol, which is collateral to the written contract, and is on a subject distinct from that to which the written contract relates.

3. The only criterion of the completeness of the written contract as a full expression of the terms of the agreement, is the contract itself. If the written contract purports on its face to be complete, and to contain the entire agreement of the parties, parol evidence will not be received to add another term to the agreement, though the written contract contains nothing on the subject to which the parol evidence is directed.

4. To justify the admission of a parol promise by one of the contracting parties, made during the negotiation of a written contract, on the ground that it was collateral, the promise must relate to a subject distinct from that to which the written contract applies.

5. Where the written contract purports on its face to be a memorial of the transaction, it supersedes all prior negotiations and agreements, and oral testimony will not be admitted of prior or contemporaneous promises on a subject so closely connected with the principal transaction, with respect to which the parties are contracting, as to be part of the transaction itself, without the adjustment of which the parties

Naumberg v. Young.

cannot be considered as having finished their negotiations and finally concluded a contract.

6. Upon the demise of a factory and the fixtures and machinery in it, there is no implied warranty that the machinery is in good repair or of sufficient capacity to do the work for which the premises were let.

7. Parties executed a lease, in writing, under seal, of a certain factory building, which was then in use for manufacturing purposes; in the building were an engine and boiler for driving the machinery; the premises were rented for the purpose of manufacturing ivory buttons; the lease contained no covenant as to the condition or capacity of the machinery. The engine and boiler being out of repair and incapable of doing the work for which the premises were rented, the tenant sued the landlord to recover damages, on an allegation of a breach of warranty. *Held*—

1. That oral testimony was inadmissible to prove that the landlord, during the negotiations for the lease, guaranteed that the engine and boiler were in thorough repair, and would furnish sufficient steam power for the business; and

2. That no such warranty was implied from the letting.

8. *Morgan* v. *Griffith*, L. R., 6 *Exch.* 70; and *Erskine* v. *Adeane*, L. R., 8 *Ch. App.* 756, disapproved.

On motion to set aside a non-suit.

The plaintiffs, on January 31st, 1880, took a lease from the defendants of a certain brick factory in the city of Newark, for a term commencing April 1st, 1880, and expiring April 1st, 1886. In the lease, which is under seal, the premises demised are described as the brick factory situate on the southeasterly corner of Norfolk street, together with the brick addition adjoining on the east, and the upper part of the frame addition adjoining on the south. Before the execution of the lease the premises had been used for manufacturing purposes, and there were in the building an engine and boiler, used for driving machinery. The defendants were, themselves, lessees from the owners of the freehold for an unexpired term. The boiler was the property of one of the defendants; the engine belonged to the owner of the fee.

The plaintiffs were manufacturers of ivory buttons, and rented the property for the purpose of carrying on that busi-

Naumberg v. Young.

ness on the premises demised. The only reference in the lease to the business proposed to be carried on is, that the lease contains a covenant by the lessees that they would not use or permit any part of the premises to be used for any other purpose than a button factory.

After the plaintiffs took possession they found that the engine was not competent to do the work, and that the engine and boiler were out of repair, and considerable money was expended by them in making repairs, involving also interruptions in the plaintiffs' business. For the money so expended and damages for loss of business this suit was brought.

At the Circuit, at the close of the plaintiffs' case, the court granted a non-suit, with leave to apply to this court to set the non-suit aside.

Argued at February Term, 1882, before Justices DEPUE, VAN SYCKEL and PARKER.

For the plaintiffs, *Samuel Kalisch.*

For the defendants, *Elwood C. Harris.*

The opinion of the court was delivered by

DEPUE, J. The action is in form an action of trespass on the case upon promises.

The declaration alleges that the defendants were desirous of demising and letting the said factory to the plaintiffs; that they were informed by the plaintiffs that the plaintiffs were desirous of the said premises for the purpose of manufacturing buttons, and that it was necessary to have power and steam, in order to carry on said manufacturing business; and that if the said defendants would furnish the said plaintiffs with a good engine and boiler, they, the said plaintiffs, would hire said premises; and thereupon the said defendants then and there expressly warranted and guaranteed to the said plaintiffs that the engine and boiler situate on the said premises were in thorough repair, and would furnish all the steam

and power necessary to carry on the business for which the said plaintiffs desired to use the same; and the said plaintiffs, relying and depending upon such warranty made by the said defendants, hired the said premises.

Naumberg, one of the plaintiffs, testified that they were looking for a suitable factory in the city, and that "amongst others, I heard of that place being vacated by Young and Morgan; Mr. Young was not in the first time I called; the second time I found him, and I told him I wanted a place furnished with a suitable engine and boiler to carry on our business with, and he told me then that this shop would be just the place for me; and he told me further that the boiler and engine was in thorough repair; and I asked him about the rent, and one thing and another, and I told him I would see him again in a day or so; I saw him again, and I told him that I am not versed well in machinery, and I wanted a place that was perfectly satisfactory in that respect; and he told me he would guarantee that the boiler and engine was in thorough repair, and that we would have more than sufficient steam and power out of that engine and boiler; in consideration of that we made the lease."

Neither in the declaration nor on the evidence do the plaintiffs rely on fraud—false and fraudulent representations by the defendants, whereby they were induced to enter into the lease—as a ground for recovering damages. The gravamen of the suit is a warranty or undertaking by the defendants that the engine and boiler were in good repair and capable of supplying the power necessary to carry on the plaintiffs' business.

The lease is entirely silent on this subject. It contains a demise in the usual form. Only the factory buildings are described as the premises demised. The engine and boiler passed under the lease as fixtures and appendages of the factory buildings. The propositions for examination are, whether, in view of the written lease, parol evidence of a warranty was competent, and whether any undertaking, with respect to the condition and capacity of the engine and boiler, was implied from the letting, under the circumstances of this case.

The general rule that parol evidence will not be received to add to or alter the terms of a contract in writing, applies to leases as well as other instruments in writing. Except where fraud or illegality has been set up, parol evidence of an agreement not expressed in the writing, is competent only where the writing contains only a part of the contract, or the evidence is admitted to apply the written contract to its subject matter, or to establish a parol contemporaneous agreement between the parties, with respect to the manner in which the rent reserved should be paid, which both parties have acted upon and carried into execution, and, therefore, have given the agreement the force and effect of an accord executed. *Oliver* v. *Phelps, Spencer* 180; *S. C.*, 1 *Zab.* 597, is an example of the latter class of cases.

There is a class of cases where the parties concluding an agreement which is reduced to writing, have, at the same time and on the same consideration, negotiated by parol another agreement which is collateral and on a subject distinct from that to which the written contract relates, in which oral evidence of such an agreement is held to be competent. *Lindley* v. *Lacey*, 17 *C. B.* (*N. S.*) 578, is a case of this class. The parties were negotiating for the sale and purchase of the fixtures and good will of a business, and their agreement on that subject was reduced to writing. At the same time a promise was made by the defendant in consideration of the plaintiff's signing the agreement, that he, the defendant, would settle an action then pending against the plaintiff at the suit of one C. The defendant neglected to settle the suit, and the goods were seized and sold under the judgment recovered therein. In an action for damages for this default, evidence of the prior oral agreement to settle the action was held admissible, notwithstanding the written agreement authorized the defendant to settle C.'s action out of the purchase money. This ruling was made on the ground that the defendant's promise to settle C.'s claim against the plaintiff and thus stay the action against him, was a thing which was totally collateral and distinct from the agreement for the sale of the goods

and the transfer of the possession of the premises—a prelim-inary matter to be done at once.

· Another class of cases in which oral testimony of an agree-ment by the parties is held to be competent, are those in which the evidence is offered to show that the written agreement was made to take effect upon a condition which was not performed. *Pym* v. *Campbell,* 6 *E. & B.* 370, and *Wallis* v. *Littell,* 11 *C. B. (N. S.)* 369, are cases of this class. In the first of these cases the action was for the non-performance of an agreement to sell. The plaintiff produced the written agreement, signed by the defendant. The defendant was allowed to prove, by oral testimony, that the agreement was drawn up and signed with the understanding that it should be no bargain until approved by A., and that A. did not approve of it. In the second of these cases the plaintiff declared on an agreement in writing by the defendant to transfer to him a farm the latter held under Lord S., upon the terms and conditions under which the same was held by the defendant under Lord S. In an action for refusing to transfer the farm, the defendant was allowed to prove, by parol, that the agreement was subject to the condition that it should be null and void if Lord S. should not, within a reasonable time, consent and agree to the trans-fer of the farm to the plaintiff. In cases of this class the oral testimony is received, not with a view to add an additional term to the written agreement in defeasance of it, but for the purpose of showing that the latter did not become an agree-ment at all.

Three recent English cases have carried the doctrine of the admissibility of parol evidence where there is a written agree-ment between the parties, to an extreme length. *Morgan* v. *Griffith, L. R.,* 6 *Exch.* 70 ; *Erskine* v. *Adeane, L. R.,* 8 *Ch. App.* 756 ; *Mann* v. *Nunn,* 43 *L. J., C. P. (N. S.)* 241.

Morgan *v.* Griffith and Erskine *v.* Adeane are almost iden-tical in their facts. A farmer in treaty for grass lands de-clined to take them, on the ground that the property was overrun with rabbits. The lease, as prepared in writing, re-served to the lessor the right to kill game. The lessee refused

to execute it until the lessor promised to kill down the game. The rabbits not having been destroyed, the tenant sued the landlord for the damage done by them to the grass and crops; and evidence by parol of the landlord's undertaking to keep down the game was admitted.

Morgan v. Griffith was decided upon little consideration. The ground of decision was that the verbal agreement was collateral to the lease, and did not affect the mode of enjoyment of the land demised. Erskine v. Adeane was decided by two equity judges on the authority of Morgan v. Griffith, reversing the decision of Lord Romilly, M. R., who had excluded the evidence, for the reason that the alleged agreement was not a distinct agreement, but an alteration of the original terms of agreement, and, to be binding, should have been inserted in the lease. Morgan v. Griffith was approved in Angell v. Duke, L. R., 10 Q. B. 174; but it is apparent from the report of the latter case that the approbation expressed had reference only to the fact that such an agreement was not within the statute of frauds; for Angell v. Duke, on that occasion, was argued on demurrer, and the only point of demurrer was that the agreement in question was for an interest in lands within the statute of frauds; and it appearing on the face of the pleading that the landlord's agreement sued on— to put the house in repair and send more furniture into it— was antecedent to and collateral to the contract of letting, the declaration was sustained. But at the trial oral testimony was tendered of the alleged promise in the course of a treaty for the lease, and the lease containing a demise of the house and the furniture in it, comprised in a schedule annexed, Blackburn, J., rejected the testimony, and held that the lease was conclusive as to all that referred to the taking of the house and furniture, and his ruling was sustained by the court in banc. Angell v. Duke, 32 L. T. (N. S.) 320; 23 Weekly Rep. 548.

In Mann v. Nunn the defendant let a messuage in an unfinished state, by a written agreement. Before and at the time of signing the agreement, he verbally promised to put the

premises in a condition fit for habitation—mentioning, among other things, a new water-closet. He failed to put in the closet, and oral testimony of his promise was held to be competent in an action by the tenant for damages. The landlord's promise possibly may be considered to relate to what Chief Justice Erle, in Lindley v. Lacey, calls a preliminary matter to be done at once, before the lease should take effect. Mann v. Nunn was doubted by Bláckburn, J., in *Angell* v. *Duke*, 32 *L. T.* 320, and, if the landlord's promise be regarded as in the nature of a covenant to repair, is contrary to that line of cases which hold that such an undertaking cannot be established by parol if the premises are let by a lease in writing.

It must be borne in mind that we are not dealing with the question as to what promises and undertakings between the parties may, in themselves, be considered collateral or conditional the one to the other, but with the salutary rule of evidence that the written agreement shall be the only exponent of the contract, as finally concluded between the parties, and that proof by oral testimony of what was said or done during the negotiations shall not be received, either to contradict the written contract or to supply terms with respect to which the writing is silent. This rule of the common law may be traced back to a remote antiquity. It is a rule founded on the obvious inconvenience and injustice that would result if matters in writing, made by advice and on consideration, and intended finally to embody the entire agreement between the parties, were liable to be controlled by what Lord Coke expressively calls " the uncertain testimony of slippery memory." 2 *Taylor on Ev.*, § 1035.

When the terms of the agreement are reduced to writing, the document itself, being constituted by the parties as the true and proper exposition of their admissions and intentions, is the only instrument of evidence in respect of that agreement which the law will recognize, so long as it exists, for the purpose of evidence.    3 *Starkie on Ev.* 1002.

Undoubtedly this rule of evidence presupposes that the

parties intended to have the terms of their agreement embraced in the written contract. If it was designed that the written contract should contain only a portion of the terms mutually agreed upon, and that the rest should remain in parol, the parties have not put themselves under the protection of the rule. But in what manner shall it be ascertained whether the parties intended to express the whole of their agreement in the written contract? The question is one for the court, for it relates to the admission or rejection of evidence. It cannot be assumed that the written contract was designed as an imperfect expression of the parties' agreement, from the mere fact that the written agreement contains nothing on the subject to which the parol evidence is directed. On that assumption that part of the rule which excludes parol proof as a means of adding to the written contract would be entirely abrogated. And to permit the parties to lay the foundation for such parol evidence by oral testimony that they agreed that that part only of their contract should be included in the written agreement, would open the door to the very evil against which the rule was designed to protect.

The only safe criterion of the completeness of a written contract as a full expression of the terms of the parties' agreement, is the contract itself. When parties have deliberately put their mutual engagements into writing in such language as imports a legal obligation, it is only reasonable to presume that they have introduced into the written instrument every material term and circumstance; and, consequently, all parol testimony of conversations held between the parties, or of declarations made by either of them, whether before or after, or at the time of the completion of the contract, will be rejected. 2 *Taylor on Ev.*, § 1035. If the written contracts purport to contain the whole agreement, and it is not apparent from the writing itself that something is left out to be supplied by extrinsic evidence, parol evidence to vary or add to its terms is not admissible. *Hei, Adm'r*, v. *Heller*, 53 *Wis.* 415. "If the instrument," says Chief Justice Erle in *Lindley v. Lacey*, "shows that it was meant to contain the

whole bargain between the parties, no extrinsic evidence shall be admitted to introduce a term which does not appear there." In *Crane* v. *Elizabeth Library Association*, 5 *Dutcher* 305, Chief Justice Whelpley said : " Where the parties have, by a written paper purporting to be complete on its face—that is, to be a full agreement—undertaken to define the whole nature and extent of their agreement, parol evidence ought not to be admitted to add a single stipulation or vary the legal effect of those contained in it." He adds : "Where an entire verbal contract has been entered into, and, in part execution of its terms, written papers have been signed by either of the parties, which, on their face, are fragmentary and do not purport to be an entire and complete contract, the parol contract is not held to be merged in them, but may, notwithstanding their existence, still be proved." In *Powell* v. *Edmunds*, 12 *East* 6, a sale of growing timber was made by auction, on printed conditions of sale which did not state anything as to the quantity. Parol evidence was offered that the auctioneer at the time of the sale warranted the quantity. The rejection of the testimony was sustained by the court, Lord Ellenborough saying : " If the parol evidence were admissible in this case, I know of no instance where a party may not, by parol testimony, superadd any term to a written agreement, which would be setting aside all written contracts and rendering them of no effect." The observations above quoted apply specially to Morgan *v.* Griffiths and Erskine *v.* Adeane. In every instance the object of a written lease is to express the mutual undertakings of the landlord and his tenant relating to the preservation and improvement of the premises for the benefit of the landlord, and the advantageous enjoyment of them by the tenant. It is undeniable that in both those cases the alleged promise of the landlord was an agreement to do acts upon the demised premises which would make their occupation and cultivation more profitable to the tenant, as much so as the landlord's promise to make substantial repairs or to contribute labor towards their cultivation. It added a new term to the terms of letting contained in the written

lease. When the contract is reduced to writing the law pre-
sumes that the writing contains the whole agreement. To
permit terms to be engrafted upon the written agreement by
mere parol evidence, would be attended with all the danger,
laxity and inconvenience which the general rule is calculated
to exclude; for an agreement might, by such additional terms,
be as effectually altered as if the very terms of the agreement
had been changed by parol evidence. 3 *Starkie on Ev.* 1007;
*Speckels* v. *Sax*, 1 *E. D. Smith* 253.

Nor can this salutary rule of evidence, which is indispen-
sable to the security of contracting parties, be maintained in
its integrity in the admission of oral testimony in relation to
matters which, in a general sense, might be considered as col-
lateral to the contract. An exception of such a compass
would, in a great variety of cases, entirely displace the rule
and make it of little value. For instance, in contracts of
letting, the usual covenants—such as for repairs and improve-
ments, the payment of taxes, rates, assessments and insurance,
the mode of cultivation or occupation, and the like—are all
collateral to the demise of the land; and if oral testimony be
received to prove the agreements of the landlord or tenant on
such subjects, the written lease would be of little avail. To
justify the admission of a parol promise by one of the con-
tracting parties to a written contract, on the ground that the
promise was collateral, the promise must not only be collat-
eral, but must, as in Lindley *v.* Lacey, relate to a subject dis-
tinct from that to which the written contract applies. In
*Dutton* v. *Gerrish*, 9 *Cush.* 89, a warehouse was let by a writ-
ten lease. Parol evidence of a warranty by the lessor at the
time of the letting that the premises were fit for the purpose
for which they were let, was excluded, on the ground, as was
said by Chief Justice Shaw, that " if there was any warranty,
express or implied, it was part of the contract of hiring, and
not something separate and independent, and must, therefore,
be found in one of the items or terms of that contract."

I think it may be considered as settled upon principle, as
well as by the weight of authority, that where the written

contract purports on its face to be a memorial of the transaction, it supersedes all prior negotiations and agreements, and that oral testimony will not be admitted of prior or contemporaneous promises on a subject which is so closely connected with the principal transaction, with respect to which the parties are contracting, as to be part and parcel of the transaction itself, without the adjustment of which the parties cannot be considered as having finished their negotiations and finally concluded a contract. Thus, a covenant by the landlord to repair is, in itself, collateral to the demise of the premises; and yet a contemporaneous promise by the landlord to make repairs cannot be established by parol evidence where there is a lease in writing. *Howard* v. *Thomas*, 12 *Ohio St.* 201; *Cleves* v. *Willoughby*, 7 *Hill* 83. Where an agreement specifies only the rent and the term, but is silent as to repairs, it is obvious that such an agreement may be as completely varied by proof of an additional stipulation that the landlord shall lay out a specific sum in alterations, as by evidence that the rent shall be diminished without any stipulations as to repairs. 3 *Starkie on Ev.* 1007. The reason for this course of decision is accurately given by Gholson, J., in Howard *v.* Thomas. He says that, " while the written agreement may be considered as silent on the subject of the improvement which, it is alleged, the landlord agreed to make, yet the making of such an improvement is to be regarded as a part of the transaction by presumption of law, and cannot be separated from it, or regarded as a distinct transaction. Any negotiation, therefore, in relation to such an improvement is concluded by the written agreement." In *Wilson* v. *Deen*, 74 *N. Y.* 531, a house was let by a written lease, with the furniture therein, a schedule of which was to be annexed to the lease. The lease was executed. The tenant took possession, but no schedule of the furniture was ever annexed to the lease. In an action in equity to cancel the lease, oral testimony that, as part of the contract of letting, the lessor agreed that certain deficiencies in the furniture should be made up by the beginning of the term, was rejected. Where P. agreed, in writing, to engage E. to play

a certain part in a drama " during the run of the piece," parol
evidence was held to be inadmissible to show that, in conver-
sations that took place before the contract was reduced into
writing, it was guaranteed by the defendant that the run of
the piece should last at least eight weeks—there being no such
proviso in the written agreement.     *Emery* v. *Parry*, 17 *L. T.*
(*N. S.*) 152.  On an agreement in writing for the sale of a fish-
stand, which contained nothing relative to the good-will of
the business, it was held incompetent to prove that at the time
of the sale a verbal contract was made that the vendor should
not engage in the fish business for a year.  *Wilson* v. *Sherburne*,
6 *Cush.* 68.   In a later case, the same court held that, on
a written agreement to sell a stock of goods at the market
price, and to lease the store for five years at the understood
rent, parol evidence was inadmissible to show that the agree-
ment was executed only as a memorandum and partial state-
ment of the contract, and that another independent oral
agreement was made at the same time and upon the same
consideration that the vendor should not engage in similar
business in the same place within five years.   *Doyle* v. *Dixon*,
12 *Allen* 576.   The case last cited was again before the court,
and the purchaser was allowed to recover on such an agree-
ment made subsequent to the written agreement, and based
upon a new and independent consideration.   *Doyle* v. *Dixon*,
97 *Mass.* 208.

A warranty of the quality of property is collateral to the
sale, for the title will pass without such a warranty ; but when
such an undertaking is entered into, it will form part of the
contract by the agreement of the parties.   *Benj. on Sales* 452.
Hence, when the contract of sale has been reduced to writing,
parol evidence is inadmissible to add a contract of warranty
to the terms of the contract, as expressed in the writing.   *Kain*
v. *Old*, 2 *B. & C.* 627 ; *Powell* v. *Edmunds*, 12 *East* 6 ;
*Harnor* v. *Groves*, 15 *C. B.* 667 ; *Mumford* v. *McPherson*, 1
*Johns.* 414; *Van Ostrand* v. *Reed*, 1 *Wend.* 424; *Benj. on
Sales* 461; *Story on Sales*, § 358 a.   Oral testimony of a
warranty is competent only where, as in *Allen* v. *Pink*, 4 *M.*

& W. 140, and in *Chapin* v. *Dobson*, 78 *N. Y.* 74, the writing is informal, and does not, on its face, purport to contain the entire contract of the parties. '

In the present case the lease is perfect and complete in all its parts. On its face it purports to express the terms of the letting as finally agreed upon. The effort is to, engraft, by parol evidence, a contract of warranty upon a contract in writing, which appears to be complete and perfect, and is silent on that subject. Oral testimony cannot be admitted for this purpose without breaking down the rule which permits parties to make their written contracts the only evidence of their undertakings, and enables them to protect themselves from the hazard of uncertain oral testimony with respect to their engagements. Where the lease contains no warranty of the condition of the premises, declarations of the lessor on that subject are not admissible to create a warranty; such proof would be adding to the written agreement by parol evidence. *Dutton* v. *Gerrish, supra,* and *Brigham* v. *Rogers,* 17 *Mass.* 571, are directly in point. In the first of these cases parol evidence of a warranty of the condition of the premises demised—there being a written lease—was excluded; and in the second it was held that, where an estate was demised by lease under seal, no action lay on a parol promise made by the lessor at the time of executing the lease, that the water on the premises demised would be good, and that there would be enough of it, and if not he would make it so.

Nor will a warranty, such as has been sued on, be implied from the contract of letting. The general doctrine of the law is, that upon a demise there is no implied contract that the property is fit for the use for which the lessee requires it, whether for habitation, occupation or cultivation. *Sutton* v. *Temple,* 12 *M. & W.* 52; *Hart* v. *Windsor, Id.* 68; *Erskine* v. *Adeane, L. R.,* 8 *Ch. App.* 756; *Clives* v. *Willoughby,* 7 *Hill* 83; *Dutton* v. *Gerrish,* 9 *Cush.* 89; *Foster* v. *Peyser, Id.* 242; *Wood on Land. & Ten.,* § 382. There is no implied duty on the owner of a house which is in a ruinous and

Naumberg v. Young.

unsafe condition to inform a proposed tenant that it is unfit for habitation, and no action will lie against him for an omission to do so in the absence of express warranty or deceit. *Keates* v. *Earl of Cadogan*, 10 *C. B.* 591. An obligation on the part of the landlord will not be implied that he shall make substantial repairs because of the premises being in a dangerous condition. *Gott* v. *Gandy*, 2 *E. & B.* 845. The doctrine with respect to covenants implied from the letting has been held in great strictness in this state. A covenant on the part of the lessor, even for title, will not arise from the relation of landlord and tenant; there must be either an express agreement to that effect, or words must be used from which such an agreement can be implied. *Gano* v. *Vanderveer*, 5 *Vroom* 293.

*Smith* v. *Marrable*, 11 *M. & W.* 5, contains the only exception to the general rule that from the letting no implied undertaking will arise that the premises are fit for or adapted to the purposes for which they were let. There a furnished house was let to a tenant for a short term—five or six weeks. It was found to be infested with bugs and unfit for habitation. The tenant quit for that reason, and set up these facts as a defence to an action for use and occupation, and his defence was allowed by the court. This case was explained and distinguished by Lord Abinger in *Sutton* v. *Temple*, 12 *M. & W.* 52, as resting on exceptional grounds. It was greatly shaken by *Hart* v. *Windsor*, 12 *M. & W.* 68, but has since been followed in the English courts as an exceptional case in *Wilson* v. *Finch*, *L. R.*, 2 *Exch. Div.* 336, where the court, following Smith *v.* Marrable, held that a family taking a lease of a furnished house might refuse to occupy it, and defend an action for rent if the house, owing to defective drainage, was unfit for habitation. The reasoning on which these cases were decided was subjected by Bramhall, L. J., in *Robertson* v. *Amazon Tug and Lighterage Co.*, 46 *L. T.* (*N. S.*) 146, to a criticism bordering on ridicule. Smith *v.* Marrable was distinguished by Parke, B., in *Sutton* v. *Temple*, 12 *M. & W.* 65, on the ground that the contract was of a mixed nature,

being for a house and furniture; and in *Cleves* v. *Willoughby*, 7 *Hill* 86, the case was likened to a sale of provisions for domestic use, on which the law will imply a contract that they are wholesome and fit for use. Certain it is that Smith *v.* Marrable has never been followed, except under the precise circumstances on which it was decided, and then only as enabling the tenant to abandon the premises, rescind the lease, and defend against the payment of rent. The case has never been cited to raise an implied warranty under any other circumstances without disapproval. The distinction between such a condition of the premises as will justify the refusal of the tenant to enter and occupy, and a warranty which will subject the lessor to an action for damages, is referred to by Cotton, L. J., in Robertson *v.* Amazon Tug and Lighterage Co.

There is no need to discuss the question as to the character of the warranties which will be implied on the hiring of a personal chattel; for the machinery claimed in the present case to have been defective and in an improper condition, consisted of fixtures, let as part and parcel of the realty. But in the latest English case on the subject the Court of Appeals decided that, on a letting of a steam-tug for towing barges from Hull to the Brazils, there was no implied warranty that the tug should be in good repair and reasonably efficient for the purposes of the voyage; and the agreement between the parties being in writing, oral testimony of such a warranty was held to be inadmissible. *Robertson* v. *Amazon Tug and Lighterage Co., supra.*

The action cannot be maintained on either of the grounds contended for, and the non-suit was properly ordered.