[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 42 
Plaintiffs instituted suit alleging in the first count of the complaint that they contracted to sell their business to defendant for $364,000. In pursuance of the contract, they sold the business, together with the name Accurate Bushing Company and that the defendant paid $194,586.65 with interest, leaving an unpaid balance of $170,584.26 and demanded judgment in that amount. In the second count of the complaint, plaintiffs sought to enjoin and restrain defendant from disposing of the stock of Accurate Bushing Company so long as the balance of the purchase price was unpaid, and also sought to enjoin and restrain the defendant against mortgaging or disposing of any assets of Accurate Bushing Company except in the usual course of business until the full purchase price was paid. Annexed to the complaint was a copy of the sales agreement dated September 16th which recited that plaintiffs owned certain machinery, tools, book accounts, trade-marks and patent rights which defendant wished to purchase on a deferred payment plan, that plaintiffs desired to continue their business known as Massari Brothers Machine Co. but to discontinue the manufacture of bushings under the name Accurate Bushing Company which defendant desired to use. The contract provided for payment of $10,000 on the signing of the sales agreement, $140,000 within ten days and the balance over a period of two years with interest at 2 1/2%, provided a substantial payment is made in one year. Paragraph 3 of the sales contract provides as follows: *Page 43 
"3. The Purchaser promises and agrees that upon acquiring title to the foregoing, he shall forthwith cause a New Jersey corporation known as `Accurate Bushing Company,' to be formed and convey all the foregoing assets to said corporation in exchange for the capital stock thereof, and to enter into a security trust agreement in favor of Sellers whereby the Purchaser agrees to hold the proceeds of sale of any shares of stock of said corporation as trustee for Sellers, to pay the same in reduction of the balance of purchase price owed to the Sellers as aforesaid, it being further provided that the Purchaser shall have full control otherwise to operate said corporation, providing he shall dispose of said shares in such a manner as to protect the security of the Sellers, it being further understood and agreed that the Purchaser will, as soon as is in his sole opinion practicable, cause a public sale of securities to be made under Section `A' of the Securities Act, in the maximum amount of $300,000, and to apply such net proceeds as are realized therefrom by the Purchaser to the reduction of said balance of the purchase price aforesaid, and the shares of said corporation shall be held in the name of Charles S. Einsiedler at all times until sold as aforesaid."
Upon filing of the complaint, the court issued a temporary restraint against disposing of any shares of Accurate Bushing Company except in accordance with paragraph 3 above quoted. Subsequently the court signed an injunctive order to the same effect. Thereafter, the defendant filed an answer to the first count, admitting the amount due but setting up that he had made tender in accordance with the terms of a Loan Agreement, which tender had been refused by the plaintiffs. Annexed to the answer were copies of the Loan Agreement and Security Trust Agreement, the latter being referred to in paragraph 3 of the Sales Agreement. Three separate defenses were set up, the first that the defendant had tendered payment of the balance of the purchase price in accordance with the terms of the Loan Agreement and the Security Trust Agreement. The second separate defense alleges that the plaintiffs consented and acquiesced in the sale of Accurate Bushing Company stock to any persons for a reasonable consideration. The third defense alleges that the plaintiffs have waived the alleged breaches of contract. The Loan Agreement dated September 25th is signed by the defendant but not by the plaintiffs and recites the purchase of the business for $364,000 and after reciting that the plaintiffs "have agreed to extend credit to the said Charles S. Einsiedler in the *Page 44 
amount covered by this loan agreement, for a period of two years, as aforesaid, subject to the terms and provisions of this agreement," the defendant covenanted and agreed "that this loan agreement is evidence of the sum of Two Hundred Fourteen thousand ($214,000.00) Dollars due from him" to plaintiffs. Then, by paragraph 3 of the Loan Agreement, the defendant agreed that the $214,000 "shall be paid on or before two years from the date hereof, together with interest on unpaid balances, it being expressly agreed that he shall have the privilege, at any time, to pay any part or all of the aforesaid indebtedness prior to the date of maturity thereof." By paragraph 5 of the Loan Agreement, the defendant agreed that should be default in any of the terms of the Security Trust Agreement, that then the plaintiffs shall have the right to demand the entire balance due and that in default of payment, the plaintiffs may institute suit on the agreement for the unpaid balance and then provides that "It is further understood and agreed by the said Charles S. Einsiedler that should any default occur at any time during the pendency of this agreement, that the said (plaintiffs) shall be required to proceed against the shares of stock of the Accurate Bushing Company, a corporation of New Jersey, held by the said Charles S. Einsiedler, and that in the event of any default, that the said (plaintiffs) shall accept said shares of stock from the said Charles S. Einsiedler at the then book value of said shares of stock of the said Accurate Bushing Company, in reduction of the balance of the said indebtedness." Also annexed to the answer was the Security Trust Agreement wherein the defendant agreed "for a period of two years, or for until such time as the entire indebtedness which I now have, * * * said indebtedness being evidenced by a loan agreement bearing even date herewith is paid, that I shall hold, in trust, all of the proceeds of sale of any of the aforesaid shares of stock as I may sell from time to time, for the purpose of paying same in reduction of the aforesaid indebtedness, * * *." It then reserved the right in the defendant "to sell the same, or to retain title to the same, as also in my sole discretion shall seem proper and fitting." *Page 45 
Upon the filing of the answer, the plaintiffs gave notice of a motion for summary judgment under Rule 3:12-3 and the trial court on November 5, 1948, entered judgment in favor of the plaintiffs and against the defendant for $170,584.26 with interest and costs. Thereafter, on November 29, 1948, the defendant filed a petition for an order to compel the plaintiffs to accept the shares of stock of Accurate Bushing Company at the book value thereof on the date of entry of judgment in reduction of the amount of said judgment and that the plaintiffs and the sheriff of Union County be restrained from proceeding further under the execution issued out of the Superior Court. Subsequently a supplemental petition was filed, praying that the receiver be enjoined from taking possession of the property of the defendant until a determination by the court on the petition and supplemental petition. The matter came on for hearing and resulted in an order dated December 10, 1948, dismissing the petition and supplemental petition.
This appeal attacks the summary judgment entered November 5, 1948, and the order of December 10, 1948, dismissing the original and supplemental petition.
The first ground urged for reversal is that the trial court erred in refusing to consider the equities raised by the answer in the law action and by the petition subsequently presented. There can be no shadow of doubt but that under the 1947 Constitution, art. 6, § 3, par. 4, both the Law and Chancery Divisions are empowered and directed to exercise the power and function of the other to the end that all matters in controversy between the parties may be completely determined, and a cursory examination of the rules promulgated by the Supreme Court demonstrates that they clearly intend to implement this constitutional mandate. It seems evident that the defendant misconceived what the trial court in fact did. While there is no written opinion in the court below, nevertheless at the conclusion of the argument on the motion to dismiss the petition and supplemental petition, the trial court indicated what he had done. He said "upon the return day of the motion for a summary judgment, which *Page 46 
was heard and decided upon the pleadings as filed, both the plaintiff and the defendant answered; that in those answers there were certain things, so-called defenses, which are all exactly the same thing as what is now advanced as an equity proposition to get an injunction. I think I passed upon those, when I dismissed the answer and when I granted the summary judgment." The court then went on and treated the answer as a counterclaim and said: "In other words, I think it can be called a counterclaim. So I am going to call it that, if you will. And I passed upon it and I held it was no defense to this action." Whether or not he considered the equity questions is set at rest by his statement that the allegations of the answer in the law action or in the petition had no merit because the terms of the original contract, the Sales Agreement and Security Trust Agreement were not complied with, and in making the order of December 10th he made clear that he considered his disposition of the motion for summary judgment as dispositive and that the same questions could not be relitigated in the manner which the defendant sought to do by filing the petition and supplemental petition.
It is next argued that the court, acting under Rule 3:8-3 should have treated the answer as a counterclaim. It is evident from what we have said above that this is precisely what the court did.
Point Third asserts error in dismissing the petition and supplemental petition because it is said that the entry of summary judgment was notres adjudicata on an application for equitable relief based on the same grounds. In support of this proposition, the defendant cites Headleyv. Leavitt, 65 N.J. Eq. 748 (E. A. 1903), to the effect that where an equitable defense fails because not cognizable in a law court, such result is no bar to a court of equity in applying an equitable remedy to the relief of a defendant by enjoining the collection of a judgment in the law action. The point can avail the defendant nothing because of the fact that the court took cognizance of the equitable defenses and decided them adversely to defendant. *Page 47 
The next point is that "The court erred in holding the Loan Agreement and Security Trust Agreement were inadmissible as violating the parole evidence rule * * *." In arguing this point the defendant citesSchlein v. Gairoard, 127 N.J.L. 358 (E. A. 1941). The case is inapplicable for the reason that the two instruments there under scrutiny contained mutual references to each other. It seems to us that to admit the unilateral Loan Agreement in evidence for the purpose of varying the terms of payment as set up in the Sales Agreement would be clear error under Naumberg v. Young, 44 N.J.L. 331 (Sup.Ct. 1882).
Lastly it is argued that the plaintiffs are estopped from challenging the binding effect of the Loan Agreement upon them and have waived any other legal rights that they might have by their "acceptance" of the Loan Agreement. The most that can be said is that the plaintiffs acknowledged receipt of the Loan Agreement "evidencing balance due under contract for sale of business." Such language may not be tortured into meaning an acceptance of the Loan Agreement as varying the terms of payment set forth in the Sales Agreement.
For the reasons stated, the order and judgment are affirmed.