Vincent A. Lupiano, J.
Plaintiff moves for summary judgment on the first and second cause of action. The defendant, in a companion motion, moves to dismiss the first two causes of action for legal insufficiency and for summary judgment in its favor on the third cause of action. The latter is for work, labor and services, and it is conceded by plaintiff that since the commencement of the action, defendant has paid plaintiff the claim represented by this cause and consequently same is moot.
The remaining two causes of action are to recover under a written guarantee of lease.
The first cause of action is based on a written guarantee executed by defendant on November 23, 1960, in connection with *147 a written lease dated November 17, 1960, for a term of 10 years between plaintiff as lessor and Kenyon Laboratories, Inc., as lessee. In this cause of action plaintiff seeks to recover from? defendant, as the guarantor of the said lease, the balance of the past due and unpaid rentals due and owing to it under said lease ;| or, in the alternative, to recover on the second cause of action, based on said written guarantee, arising out of Kenyon’s total breach of the 10-year lease wherein plaintiff seeks to recover total damages for such breach, representing the difference between the total rent for the said 10-year lease less the total reasonable market rental value of the premises for the 10-year term.
The answer denies certain of the allegations of the complaint, but expressly admits the execution and delivery by defendant of the written guarantee; and it affirmatively alleges a first defense that the said guarantee agreement was executed and delivered by defendant to plaintiff on or about November 23,
1960, subsequent to the execution and delivery of the lease agreement on November 17, 1960; and that the guarantee agreement was made without any consideration flowing from plaintiff to defendant; and the second defense recites that it did not comply with certain of the provisions of section 19 of the Stock Corporation Law and that its alleged guarantee is accordingly ultra vires and unenforcible against it.
Previously, on March 31, 1959, plaintiff and Kenyon had entered into a lease by reason of which plaintiff agreed to and did construct on its land a certain building for Kenyon’s use, and the latter agreed to pay rent as provided for therein. The building was continuously occupied by Kenyon from September 22,1959.
Subsequently, plaintiff constructed an addition to said building, with respect to which building and addition plaintiff and Kenyon entered into a further lease in Connecticut, dated November 17, 1960. It is to this lease that defendant’s written guarantee, dated November 23, 1960, was made, executed by defendant’s president in New York, and upon which was embossed defendant’s corporate seal. The larger structure, to wit, the building and addition, was occupied continuously by Kenyon from October 17, 1960. Thereafter, Kenyon failed and refused, despite demand, to pay any rent owing, or to become owing, under the said lease, and it was adjudicated a bankrupt in the United States District Court of Connecticut on April 5, 1961. No rent has been paid for said premises since October 1, 1960.
*148 There cannot be any dispute as to the default in payment of rent, the making of the lease, and the execution and delivery of the guarantee.
The defense of lack of consideration cannot stand. The fact that the lease was executed between the parties thereto in Connecticut on November 17, 1960, and the guarantee was executed thereafter in New York on November 23, 1960, does not constitute a lack of consideration. Those instruments so executed, although on different dates, can be considered to have been made contemporaneously. Even if the guarantee was based on a past consideration (which defendant contends renders its agreement ineffective), such contention is repudiated by subdivision 3 of section 33 of the Personal Property Law.
Nor is the defense of ultra vires a sufficient challenge to the motion. Subdivision (a) of section 19 of the Stock Corporation Law, authorizes the guarantee of any obligation for the payment of money ‘1 when the guaranty is made in connection with, and incidental to the exercise by such corporation of its corporate rights, powers, purposes, privileges and franchises”. The making of the guarantee falls within the scope of the above statutory provision, since the demonstrated facts show that the guarantee was made by defendant in behalf of and in furtherance of its financial and business interest in Kenyon, which company was affiliated and related to defendant in various ways. In this connection, the proof shows that Kenyon was a subsidiary of defendant, which owned 51% of its stock; that Kenyon was a i supplier of gyros to defendant for many years; that it was a 'customer of defendant and owed defendant approximately $100,000; that it was interrelated with defendant with respect to common officers, directors and employees, and it was also Jinterrelated with defendant with respect to a proposed merger f or consolidation.
It is clear that the relationship between defendant and Kenyon reveals so close a business and organizational relationship as to lead to the inevitable conclusion that the guarantee was made by defendant in furtherance of its business interests and “in connection with, and incidental to, the exercise by such corporation of its corporate rights, powers, purposes, privileges and franchises”. Furthermore, under defendant’s amended certificate of incorporation, it is apparent that the making of the guarantee by defendant falls within its incidental or implied powers, particularly in view of the scope and nature of the ,multi-faceted business relationship between defendant and Kenyon (Steinway v. Steinway & Sons, 17 Misc. 43; People *149 ex rel. Tiffany & Co. v. Campbell, 144 N. Y. 166; National State Bank of Newark v. E. B. Metal Prods. Co., 137 N. Y. S. 2d 202).
Moreover, section 19 of the Stock Corporation Law expressly provides that nothing therein “ shall be deemed to deny, limit or restrict the powers of guaranty or warranty possessed by any stock corporation at common law ”.
At common law a corporation may guarantee the payment of rent and the performance of a lease of premises by one of its customers (Matter of German Jewish Children’s Aid, 151 Misc. 834 and cases cited therein; Hess v. Sloane, 66 App. Div. 522, affd. 173 N. Y. 616; Koehler & Co. v. Reinheimer, 26 App. Div. 1).
It must be further noted that defendant was more than a supplier, customer and creditor of Kenyon; it owned 51% of Kenyon’s stock and exercised control through interlocking officers, directors and employees.
In Fletcher, Cyclopedia of the Law of Private Corporations (vol. 6, § 2553) it is stated: “It would seem that where one corporation owns and controls another corporation, the former may guarantee the debts of the latter when the purpose is to protect its own interest. ’ ’ Said treatise further states at section 2593 (n. 68): “ A corporation may carry on its proper business by means of subdivisions or auxiliary corporations or enterprises, and lend its credit to them, just as it might have used its own funds in such business to advance it. ’ ’
The further argument raised by defendant on this motion is that the lease agreement between plaintiff and defendant was not binding because the description of the addition is insufficient in that it speaks of “ the plans, size, construction and location of said addition to be mutually agreed upon by both parties.” The papers show that the addition was a physical reality and already in process of construction when the lease was first submitted to Kenyon; and then due to delay caused by Kenyon’s procrastination, said lease was executed approximately one month after Kenyon had already gone into occupation and possession of the said addition.
The other contentions advanced by defendant on this motion do not raise any real or bona fide issue of fact sufficient to deny the plaintiff summary judgment.
On the first cause of action, plaintiff is entitled to recover for unpaid rent owing and now in default up to the present time, under the usual rule of damages. However, it also seeks recovery, in the alternative, on its second cause of action for total damages based upon the total breach by Kenyon of the 10-year lease.
*150 The lease involves Connecticut realty and was executed and delivered by parties residing in Connecticut. It appears obvious that the law of Connecticut applies with respect to the question of damages for total breach of a lease. It has been established under the facts herein that under Connecticut law Kenyon is liable to plaintiff for a total breach of the lease and for total damages caused by such breach (Sagamore Corp. v. Willcutt, 120 Conn. 315). Also, the court may take judicial notice of the Connecticut law (Civ. Prac. Act, § 344-a; Graybar Elec. Co. v. New Amsterdam Cas. Co., 292 N. Y. 246, 250; Pfleuger v. Pfleuger, 304 N. Y. 148).
Accordingly, the plaintiff is entitled to summary judgment on its second cause of action and may have an assessment of damages in respect thereto. In reaching this conclusion, the court has considered defendant’s attack on the first and second cause of action for dismissal thereof grounded on legal insufficiency. The complaint adequately identifies the premises leased; and it cannot be held that any uncertainty existed between the parties as to the description and identification of the leased premises at the time the lease was executed. A fair reading of the complaint shows that the premises, including the addition, were a physical reality,, then in being, and already occupied and possessed by Kenyon at the time the lease was executed. Further, plaintiff has satisfactorily pleaded due performance of all the terms and conditions of the lease and the necessary elements of a guarantee to impose liability on defendant. The motion to dismiss for legal insufficiency is denied.