Alice B. CRAWFORD, Plaintiff,

v.

TEXACO, INCORPORATED and Amax Petroleum Corporation, Defendants.

No. 65 Civ. 1187.

United States District Court
S. D. New York.
June 28, 1966.

because the administrator had not complied with section 622 (note 1, supra).

. Then section 1723, Mississippi Code 1930.

H. Donald Sills, New York City, for plaintiff; Milberg & Levy, New York City, Lawrence Milberg, Melvyn I. Weiss, New York City, of counsel.

James O. Sullivan, Paul B. Wells, Michael W. Graney, New York City, for defendant, Texaco, Inc.

WEINFELD, District Judge.

■ This is an action that involves Louisiana land, concerns an order of the Louisiana Conservation Commissioner permitting oil drilling operations thereon and is governed by Louisiana law.[1] It was brought in this district upon allegations of diversity of citizenship, the plaintiff being a citizen of New York, the defendant Texaco, a Delaware corporation with its principal place of business in the State of Texas, and the defendant

---

1. Since the action arises out of a lease of Louisiana land and the use to which the lessee put the land and since the judgment will affect the lessee's interest in the land, the New York courts would apply Louisiana's substantive law in deciding the issues presented. See In re Barnett, 12 F.2d 73, 77 (2d Cir.), cert. denied sub nom. United Cigar Stores Co. of America v. Rayher, 273 U.S. 699, 47 S.Ct. 94, 71 L.Ed. 846 (1926); Mallory Assocs., Inc. v. Barving Realty Co., 300 N.Y. 297, 301, 90 N.E.2d 468, 15 A.L.R.2d 1193 (1949); Chester Airport, Inc. v. Aeroflex Corp., 37 Misc.2d 145, 237 N.Y.S.2d 752, 756 (Sup.Ct.1962), modified on other grounds, 18 A.D.2d 998, 238 N.Y.S.2d 715 (1st Dep't 1963); Bowen v. Frank, 92 N.Y.S.2d 527 (Sup.Ct.1949). This court, sitting in diversity, must apply the same law. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Amax, a Louisiana corporation, with its principal place of business there.[2]

The suit revolves about a claimed breach of an oil, gas and mineral lease of land known as the Berteaux tract, located in Ascension Parish, Louisiana. The plot, which fronts on the Mississippi River, is about 300 feet wide and runs back from the river a distance of approximately two miles. In June 1963 Alice Crawford, the plaintiff, together with twenty other co-owners of undivided interests in the Berteaux tract, leased the mineral rights to the defendant, Texaco, Inc., which in turn, in July 1963, subleased certain of its rights to Amax Petroleum Corporation, R. B. Mitchell and J. M. Flaitz. Plaintiff's twenty co-lessors are not named herein as plaintiffs or defendants; Mitchell and Flaitz, two of the three sublessees, are not named as defendants. Amax, the third sublessee, while named a defendant, has not been served with process.

■ The claims here asserted by the plaintiff center about Louisiana laws designed to conserve her petroleum resources.[3] Petroleum is a relatively free-flowing liquid which cannot be contained in place under a given tract of land; when petroleum under a tract is removed, the petroleum under adjacent land will drain into the resulting void. In order to prevent wasteful drilling,[4] and to protect Louisiana property owners from unfair drainage by adjacent property owners,[5] Louisiana has adopted a regulatory scheme which in general prohibits a property owner from drilling a well more than 3,000 feet below sea level[6] within 330 feet of any property line.[7] The own-

ership of property is ofttimes so divided that a well cannot be located in compliance with this requirement. Accordingly, the Louisiana Conservation Commissioner has promulgated an order which, in appropriate circumstances, permits an owner either to agree with neighboring owners to form a drilling unit of sufficient size or to petition the Commissioner for the creation of such a unit under a so-called forced pool or unit arrangement.[8]

Since the Berteaux tract was only 300 feet wide, oil could not be taken from it unless combined with another tract or tracts into a drilling unit. Immediately adjacent to the Berteaux tract is the Marchand tract, less than 330 feet wide, which geological information in the possession of Amax disclosed as the most logical place for drilling a well. The present suit arises out of an application by Amax to the Louisiana Conservation Commissioner which was favorably passed upon after a public hearing upon notice to all interested parties, including the plaintiff, whereby portions of the Marchand, Berteaux and other adjacent tracts were forced pooled into two drilling and production units.

Plaintiff claims that the application by Amax to the Conservation Commissioner for the formation of the integrated units constituted a breach of the original lease, since a provision of the lease which would have permitted the lessee to form drilling units had been stricken therefrom. The complaint sets forth four separate claims —two by plaintiff individually, one seeking damages for the claimed breach and the other seeking a termination of the lease, and, based upon the same facts,

---

2. In an affidavit submitted by Texaco upon the instant motion, it is averred that Amax is a Delaware corporation with its principal place of business in Oklahoma.

3. La.Rev.Stat. tit. 30, ch. 1 (1950).

4. See La.Rev.Stat. tit. 30, § 2 (1950).

5. See La.Rev.Stat. tit. 30, § 4(C) (3) (1950).

6. The parties appear in agreement that as a practical matter all modern wells are at least that deep.

7. See Louisiana Dep't of Conservation, Statewide Order No. 29–E, July 15, 1957, as amended, Sept. 5, 1957.

8. Ibid. See also La.Rev.Stat. tit. 30, § 4 (C) (13) (1950).

two class actions on behalf of all the co-lessors seeking the same relief.

The defendant moves both on procedural and substantive grounds for dismissal of the complaint. It seeks dismissal for failure to join as indispensable parties (1) plaintiff's twenty co-owners as either plaintiffs or defendants; (2) two of the three sublessees, R. B. Mitchell and J. M. Flaitz, (3) the persons having interests in all adjacent lands included in the units, and (4) the Conservation Commissioner of the State of Louisiana. Texaco further urges that the two class actions must be dismissed on the ground that plaintiff does not adequately represent the members of the alleged class. Finally, it presses that, apart from the foregoing, the complaint fails to state a claim upon which relief can be granted and, since affidavits have been submitted, seeks summary judgment.[9]

■■ The court is of the view that the defendant's contention with respect to the failure to join indispensable parties—at least as far as the co-lessors are concerned—must be upheld. There is no prescribed formula for determining indispensability of parties, and the general policy has been to decide the issue in each case on practical considerations.[10] Plaintiff and the twenty other co-lessors are the heirs of August Berteaux and each is a co-owner of the Berteaux tract, the mineral rights of which are the sub-ject of the lease. Each has an interest in the lease which necessarily would be affected by an adjudication that a breach occurred—indeed plaintiff here seeks to have the lease terminated for the alleged breach by Texaco, the lessee, and Amax, one of the sublessees. The common interests of the twenty other co-lessors make them indispensable parties to this suit. Their indispensability is highlighted by the fact that even after the alleged breach upon which plaintiff seeks to vitiate the lease, sixteen[11] of the twenty-one co-lessors, with full knowledge of the asserted breach, received and continue to receive royalty payments under the lease and in accordance with the unitization order. Clearly the interests at least of the sixteen are, to quote the oft-cited and leading case of Shields v. Barrow,[12] "of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."[13] The rule has been applied particularly in suits to cancel or rescind oil and gas leases where not all of the co-owners or tenants in common have been joined, since such leases are deemed entire and indivisible.[14] The plaintiff's failure to join her co-lessors as parties to this suit requires that her two individual claims be dismissed, since it ap-

---

9. See Fed.R.Civ.P. 12(b); Cook v. Hirschberg, 258 F.2d 56, 57–58 (2d Cir. 1958); Hirsch v. Archer-Daniels-Midland Co., 258 F.2d 44, 45–46 (2d Cir. 1958).

10. See Shaughnessy v. Pedreiro, 349 U.S. 48, 54, 75 S.Ct. 591, 99 L.Ed. 868 (1955); Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 80, 41 S.Ct. 39, 65 L.Ed. 145 (1920); Roos v. Texas Co., 23 F.2d 171, 172 (2d Cir. 1927), cert. denied, 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001 (1928).

11. The moving affidavit states that "most" of the co-lessors have accepted the payments; the defendant's brief fixes the number as 16, and this statement is not challenged.

12. 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1855). See also Roos v. Texas Co., 23 F.2d 171, 172 (2d Cir. 1927), cert. denied, 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001 (1928).

13. 58 U.S. (17 How.) at 139.

14. See Kentucky Natural Gas Corp. v. Duggins, 165 F.2d 1011, 1016 (6th Cir. 1948). Accord, Brodsky v. Perth Amboy Nat'l Bank, 259 F.2d 705, 707 (3d Cir. 1958); Guth v. Texas Co., 155 F.2d 563, 566 (7th Cir. 1946), cert. denied, 332 U.S. 844, 68 S.Ct. 268, 92 L.Ed. 415 (1947); 3 Moore, Federal Practice ¶ 19.-09, at 2158–59 (2d ed. 1964).

pears that not all the co-lessors are subject to the jurisdiction of this court.[15]

There remain plaintiff's two class actions, which are based upon the same allegations as her individual claims, but which she asserts are brought on "behalf of herself and all other co-lessors." In order to permit the maintenance of the class actions, it must appear that the persons constituting the class are so numerous that it is impracticable to bring them all before the court and that plaintiff will adequately represent their common interests.[16]

We consider first the latter requirement. The issue here is whether plaintiff's interests are compatible with and not antagonistic to those she purports to represent.[17] It is settled that an action to enforce an agreement may not be maintained by one member of a class on behalf of all others when some of the others do not wish to have the agreement enforced.[18] And conversely it follows that an action seeking to terminate an agreement for claimed violation of its terms may not be brought on behalf of the class when a number of its members assert no breach.

Plaintiff by this action seeks in addition to money damages an adjudication terminating the lease for the claimed breach. As already noted, when notice of the proceeding was given by the State Conservation Commissioner to interested parties, which included plaintiff and all her co-lessors, neither she nor nineteen others (one did) appeared or opposed the application. Sixteen of her co-lessors have accepted the royalty payments distributed under the unitization order, which suggests that at least that number of the class the plaintiff purports to represent do not disavow the lease or make any claim that the application for forced unitization constituted a breach of the lease. The fact that none of the plaintiff's co-lessors has joined with her in the attack on the lease is also of significance,[19] particularly so since four of them are citizens of this state.[20] Upon the facts here presented the plaintiff's interests appear adverse to those of the greater number of persons in the class she presumes to represent, and it cannot be said that she is an adequate representative.

Apart from the fact that plaintiff's interests are antagonistic to those of other co-lessors, there is also a substantial question as to whether the numerosity safeguard has been satisfied,[21] or, as plaintiff alleges, that "it is impracticable" to bring all the co-lessors before this court because they live in six different states. Her allegation in this respect is at once challenged by the circumstance that no great difficulty was encountered in getting each to execute the lease in question.

Under the circumstances here presented the motion to dismiss the class actions

---

15. See Shields v. Barrow, 58 U.S. (17 How.) 130, 141–142, 15 L.Ed. 158 (1855); 3 Moore, Federal Practice ¶ 19.04, at 2116 (2d ed. 1964). See also Fed.R.Civ.P. 4(f).

16. Fed.R.Civ.P. 23(a); Kainz v. Anheuser-Busch, Inc., 194 F.2d 737, 740 (7th Cir.), cert. denied, 344 U.S. 820, 73 S.Ct. 17, 97 L.Ed. 638 (1952).

17. See 3 Moore, Federal Practice ¶ 23.07 (3), at 3428 (2d ed. 1964). See also Molina v. Sovereign Camp, W.O.W., 6 F.R.D. 385, 395 (D.Neb.1947); Clark v. Chase Nat'l Bank, 45 F.Supp. 820, 823 (S.D.N.Y.1942).

18. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

19. Compare Quirke v. St. Louis-S. F. Ry., 277 F.2d 705, 708 (8th Cir.), cert. denied, 363 U.S. 845, 80 S.Ct. 1615, 4 L.Ed.2d 1728 (1960).

20. Of the others, 7 are residents of Louisiana, 4 of California, 2 of the State of Washington, and one each of Arizona, Maryland, and Nevada.

21. Compare Matthies v. Seymour Mfg. Co., 270 F.2d 365, 372 (2d Cir. 1959), cert. denied, 361 U.S. 962, 80 S.Ct. 591, 4 L.Ed.2d 554 (1960).

also is granted.[22] This disposition makes it unnecessary to reach the question of the indispensability of other parties or the defendant's motion for summary judgment.

22. See Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Quirke v. St. Louis-S. F. Ry., 277 F.2d 705, 708 (8th Cir.), cert. denied, 363 U.S. 845, 80 S.Ct. 1615, 4 L.Ed.2d 1728 (1960); Molina v. Sovereign Camp, W.O.W., 6 F.R.D. 385, 393–395 (D.Neb.1947); 3 Moore, Federal Practice ¶ 23.07(3), at 3428–29 (2d ed. 1964).