**SAINT ANTHONY–MINNEAPOLIS, INC., a Florida corporation, Plaintiff,**

v.

**RED OWL STORES, INC., a Delaware corporation, Defendant.**

**No. 4–69 Civ. 124.**

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 15, 1970.

Dorsey, Marquart, Windhorst, West & Halladay, by John D. Levine, Minneapolis, Minn., for plaintiff.

Cant, Haverstock, Gray, Plant & Mooty, by Edward J. Callahan, Jr. and Charles Dayton, Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

Before the court is a controversy stemming from a restrictive covenant in a shopping center lease agreement. The first issue for determination is whether the federal court's jurisdiction obtains over a case where a covenant in a lease to a food super market prohibiting the lessor shopping center developer and owner from leasing or selling space to another food super market within the shopping center or on any other property within 2,500 feet of the demised premises owned and controlled by lessor is valid in the face of federal and state antitrust laws after the food market for whose benefit the covenant was created has sublet to a general retail store and removed itself from the premises to an area under different ownership immediately adjacent to the shopping center.

In 1949, defendant Red Owl Stores, Inc. (Red Owl) entered into a lease agreement with plaintiff's predecessor in interest covering certain premises in Minnesota in St. Anthony Shopping Center for the express purpose of establishing and operating a retail food market. The above summarized exclusive covenant was inserted in its lease. Red Owl originally reciprocally agreed in another covenant that should it move from the premises it would sublet only to another food super market.

At the time the lease was signed the shopping center had not yet been built, and was expected to be and was in fact financed by funds borrowed by the lessor on the security of a number of long term leases including that executed by Red Owl. The termination date provided in the lease ultimately became December 11, 1970 subject to an additional five year renewal option. Red Owl continued to occupy the premises only until early 1958. Meantime it entered into an option agreement to purchase and subsequently bought land on which its present store is located from a landowner unrelated to the present plaintiff or its predecessor. The site is immediately adjacent to the land owned by the plaintiff on which the shopping center is situate and is within 2,500 feet of the original Red Owl premises.

On June 12, 1957 the 1949 lease was modified by mutual agreement and· the provision which required Red Owl to

sublet only to a food market was altered to allow a sublease to a retail business of any nature to which the lessor would agree and which would not violate provisions in other leases. Red Owl thereupon sublet its former premises to a general retail store but continued as a party, in the nature of a surety, on the 1949 lease until the end of the original term in 1970. On January 2, 1963, the St. Anthony Shopping Center was sold to the present plaintiff, which claims to have suffered substantial damages due to its inability to lease or sell certain proximate premises to a food super market as a result of the continuing restrictions in the lease covering the original Red Owl premises.

On March 23, 1967 in consideration of the payment of $2,500 by plaintiff, Red Owl agreed to terminate its 1949 lease effective August 15, 1967 and the former Red Owl premises were leased to a bank, its present occupant. State court litigation ensued wherein Red Owl alleged fraud on plaintiff's part in inducing the termination agreement. From an ultimate judgment in favor of plaintiff and against Red Owl that case now is on appeal to the Minnesota Supreme Court.

The present action was filed April 16, 1969 alleging that the 1949 restrictive covenant is illegal under Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1), the Constitution of the State of Minnesota Article 4, Section 35, Minnesota Statutes 325.81 and 325.83, and other laws of the State of Minnesota. It is urged that once Red Owl removed itself from the original premises, the restrictive covenant became "naked" and that an implied condition of the covenant on which its validity and enforceability depends is that Red Owl should continue to operate a retail food market on the leased premises. Stated another way, the restriction is said to be valid and legal only so long as the person in whose favor it ran, i. e., Red Owl, was operating on premises owned or controlled by plaintiff the kind and type of enterprise or business which is restricted by the covenant.

Plaintiff seeks a judgment finding that the acts of the defendant have violated the above mentioned laws, a declaration that the exclusive covenant has been invalid and unenforceable since June 4, 1958 when Red Owl vacated the premises, an injunction against the defendant's further violation of the aforementioned laws, and treble damages in the amount of $315,000. Defendant has duly answered the complaint.

Both sides now have moved for summary judgment. Defendant requests a complete summary judgment whereas plaintiff requests a summary judgment only on the issue of liability. In addition defendant has moved to dismiss on the grounds that the court does not have subject matter jurisdiction, that the statute of limitations has run, that there is no diversity of citizenship and pendent jurisdiction to enforce the State laws should not be exercised and that in any event no cause of action exists under Minnesota law. Defendant further has moved to amend its answer in two respects.

■■ Initially the court must determine whether plaintiff has established jurisdiction under the federal antitrust statutes—Section 1 of the Sherman Act and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26).

Section 1 of the Sherman Act, 15 U.S.C. § 1, provides in part:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce *among the several States,* or with foreign nations, is declared to be illegal * * *." [Emphasis added]

To be an offense under the federal laws, it must be shown that the alleged unlawful practice restrains trade in interstate commerce. It is not enough that the party or parties be engaged to some extent in interstate commerce, but the alleged illegal practice must in some way affect or restrain it.

" * * * The test of jurisdiction is not that the acts complained of affect a business engaged in interstate

commerce, but that the conduct complained of affects the interstate commerce of such business." Page v. Work, 290 F.2d 323 at 330 (9th Cir. 1961).

A restraint in intrastate commerce of course falls within the prohibitions of the act if the threat to interstate commerce is sufficiently substantial. Mandeville Island Farms v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 (1948). If the court is to invoke jurisdiction, the restraint complained of either must occur in the flow of interstate commerce or, if local, it must have a substantial effect on interstate commerce.

In the instant case the restriction prohibits the super market activity in a small defined area in or near (if owned or controlled by plaintiff) St. Anthony Shopping Center, i. e., within a 2,500 foot radius. The restrictive covenant itself clearly is not in interstate commerce, nor is the business of the plaintiff, owning and operating real estate in that same defined area, in interstate commerce. Essentially all the retail sales of the defendant Red Owl are local and intrastate transactions. It is alleged and undoubtedly true that Red Owl purchases the products it re-sells and that 80% to 90% of these goods, said to be an annual volume of $1,800,000, have some connection with interstate commerce. It cannot be claimed that Red Owl is in any way "restrained" by the exclusive covenant. Rather it is benefitted. It would seem that the restraint on interstate commerce, if any, would be on the purchasers of merchandise by a phantom or prospective retail super market, which might occupy premises within the 2,500 foot radius. The court need not decide whether such a prospective super market might have standing to claim a restraint on interstate commerce affecting its activities since it is not a party here.

■ The incidental flow of supplies in interstate commerce does not in itself transform an essentially intrastate activity into an interstate enterprise.

Marston v. Ann Arbor Property Managers Ass'n, 302 F.Supp. 1276 (E.D.Mich. 1969); Lieberthal v. North Country Lanes, Inc., 332 F.2d 269 (2d Cir. 1964); Elizabeth Hospital Inc. v. Richardson, 269 F.2d 167 (8th Cir. 1969). In the latter case the court stated:

" * * * Interference with intrastate activity cannot constitute a violation of the Sherman Act unless its effect on interstate commerce is both substantial and direct." 269 F.2d at 170.

The closest case to the situation at bar is Savon Gas Stations No. 6, Inc. v. Shell Oil Co., 203 F.Supp. 529 (D.Md.1962), aff'd 309 F.2d 306 (4th Cir. 1962). There a restrictive covenant in a shopping center lease provided that the lessor should not permit other property it owned or controlled in the shopping center to be used for a competing gas station. At defendant's request a barrier was built by the lessor to prevent plaintiff from using any portion of the shopping center parking lot. The court found that the restrictive covenant was not in violation of the Sherman Act as interstate commerce was not sufficiently involved. It appears that gasoline was purchased locally from a distributor who purchased it interstate and that motor oil and miscellaneous items were purchased directly interstate. The court noted at p. 534:

" * * * While there are certain interstate aspects in the acquisition of the products plaintiffs sell, and the equipment to make sales and render services at retail, the decided cases indicate that the retail sale of gasoline, and related products, is intrastate in character."

■ The instant case seems to the court to be analogous to *Savon*. While there is no evidence before the court as to just how Red Owl, or perhaps of more importance, an imaginary competitor located within the 2,500 foot radius purchases or would purchase supplies of merchandise, it seems to the court that the retail sale of food products essentially is intrastate. See Fairway Foods

Inc. v. Fairway Markets Inc., 227 F.2d 193 (9th Cir. 1955). Interstate commerce which could be adversely affected is so incidental or far removed from the questioned lease contract at least as to the present parties to the case at bar as not to fall under the provisions of the Sherman Act.

Turning then to the claimed violations of either the decision or statutory law of the State of Minnesota the next question is whether, in view of the decision to dismiss the federal claim, the court nevertheless should determine the state claims on the merits. It appears to the court's satisfaction that there is no diversity of citizenship jurisdiction in this case. Both the plaintiff and defendant have their principal places of business in Minnesota, despite the assertion in the complaint that Florida is the principal place of business of the plaintiff, a corporation formed solely to purchase and own the land on which St. Anthony Shopping Center is situate and which has no other substantial business or holdings.

■■■■ The court is urged to assume pendent jurisdiction. While the dismissal of a federal claim does not automatically remove jurisdiction in a federal court to hear a state claim, the exercise of jurisdiction is nonetheles in the sound discretion of the court. Sunbeam Lighting Co. v. Pacific Associated Lighting Inc., 328 F.2d 300 (9th Cir. 1964). The court should consider whether the federal claim is substantial at least to the extent that it can overcome a motion to dismiss for failure to state a claim and whether the federal and state claims arise out of the same operative facts. In re Union National Bank & Trust Co. of Souderton, Pa., 298 F.Supp. 422 (E.D. Pa.1969); Edward J. Moriarty & Co. v. General Tire & Rubber Co., 289 F.Supp. 381 (S.D.Ohio 1967); Robinson & Sons Inc. v. Mister Donut of America Inc., 270 F.Supp. 99 (D.Mass.1967). A mere adverse decision on the merits of the federal claim does not mean that it is insubstantial. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). However it would appear that in a case

such as at bar where the federal claim cannot withstand a motion to dismiss for lack of jurisdiction, it is not substantial in the sense of dictating that the court accept pendent jurisdiction. If the federal claim here were considered substantial, then an aggrieved party could sue in federal court any time based on state claims by merely asserting that the Sherman Act is violated.

Other courts have said that where the federal claim is not meritorious, pretty clearly unfounded, frivolous, or should not have been entertained in the first place, the state claim should fall. Kaz Mfg. Co. v. Cheesebrough-Pond's Inc., 211 F.Supp. 815 (S.D.N.Y.1962); Adams v. Albany, 80 F.Supp. 876 (S.D.Cal. 1948).

The most recent word of the Supreme Court is found in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966):

"＊ ＊ ＊ The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. ＊ ＊ The state and federal claims must derive from a common nucleus of operative fact." 383 U.S. 725, 86 S.Ct. 1138.

And in the recent case of In re National Bank & Trust Co. of Souderton, Pa., *supra,* the court stated:

"There are several factors which have been developed to determine whether or not pendent jurisdiction will attach in a given case. The first of these is whether or not plaintiff's federal claim is substantial in the sense that it could withstand a jurisdictional challenge in a case in which jurisdiction is based on the presence of a federal question without the joinder of a non-federal claim. ＊ ＊ ＊ Federal claims have satisfied the substantiality requirement for pendent jurisdiction purposes where it could not be dismissed on the face of the pleadings alone. ＊ ＊ ＊ So long as the federal claim is not clearly unsound or obviously without merit, it is sufficient to confer jurisdiction on the Federal

**1050**

Court even over the non-federal claim."
298 F.Supp. at 424.

See also United Mine Workers of America v. Gibbs, *supra,* where the court said:

" * * * Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." 383 U.S. at 726, 86 S.Ct. at 1139.

See Ruckle v. Roto American Corp., 339 F.2d 24 (2d Cir. 1964).

In view of the above, the numerous other claims and assertions made by the parties including defendant's motion to amend need not be considered or ruled on. A separate order has been entered.