The **PLUM TREE, INC.,** Plaintiff,

v.

**N. K. WINSTON CORPORATION** et al.,
Defendants.

**No. 72 Civ. 447.**

United States District Court,
S. D. New York.

Nov. 1, 1972.

Forster, Tomei & Kadish, Gerald Kadish, New York City, for plaintiff; by Martin Howard Katz, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants; by Morris B. Abram, Robert S. Smith, Anthony M. Radice, New York City, of counsel.

GURFEIN, District Judge.

This is a motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(1), 12(b)(6) and 56.[1] The amended complaint is in two counts. Jurisdiction is based on diversity of citizenship; and on the Sherman Act, the Clayton Act and the Robinson-Patman Act, 15 U.S.C. §§ 1, 13, 15, 22 and 28 U.S.C. § 1391. Declaratory judgment is sought under § 1391.

## I

The first count alleges that the plaintiff, a franchisor of retail gift shops and a shopping center tenant selling giftware in four shopping centers owned by the defendants entered into leases with the several defendants which are parents, subsidiaries, affiliates or alter egos. It is alleged that in connection with or prior to the execution of such leases, the defendants expressly and impliedly, orally and in writing, wilfully and maliciously promised the plaintiff "many things" including (a) that the defendants had a high degree of expertise in planning and operating shopping centers; (b) that the shopping centers were in prime locations; (c) that the defendants were rendering and would continue to render meaningful and effective assistance to the tenants for the purpose of increasing their business; (d) that the defendants were using sound business judgment in selecting tenants and mixing the various types of businesses; (e) that the defendants had expended and were continuing to expend money for advertising to make the tenants known to the public; (f) that the defendants would give voice to the wishes of the tenants in the operation of the shopping center; (g) that the defendants provided and would continue to provide adequate security measures to protect the tenants from thefts and the like; and (h) that the defendants provided and would continue to provide for maintenance and cleaning services sufficient

1. The plaintiff has moved to determine that the action may be maintained as a class action and has also moved to stay determination of the motion to dismiss pending discovery by the plaintiff. The plaintiff has submitted no opposing affidavit on the motion to dismiss and stands on the complaint.

to keep the shopping centers in good repair, lighted and clean. It is alleged that when the defendants made these "representations, warranties and promises," the defendants intended reliance on them and "knew or should have known" they were "false, misleading and fraudulent." The plaintiff, relying on them, entered into the leases. It is then alleged that the defendants have "breached their aforesaid representations, warranties and promises and the said leases." Count I concludes with the allegation that as a proximate consequence of the "aforesaid conduct, breaches, acts and omissions" the plaintiff has suffered large losses of sales and profits and will continue to do so in the future.[2]

The theory of the action is primarily for breach of express oral warranties and oral contractual promises relating to the operation of the shopping center during the term of the lease. Patently, the parol evidence rule is the first hurdle for the plaintiff. Since the parol evidence rule is a rule of substantive law (Higgs v. De Maziroff, 263 N.Y. 473, 477, 189 N.E. 555 (1934)), a Federal District Court must apply that State law which the forum State, New York, would apply (Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)) including any applicable conflicts of law rules. Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

The leases involved relate to real property in New Jersey, New York and Arizona. The State courts in New York would apply the law of the situs of the real estate even under the "principal contacts" theory. Cf. Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (1954). See Chester Airport, Inc. v. Aeroflex Corp., 37 Misc.2d 145, 237 N.Y.S.2d 752 (Sup. Ct.N.Y.Co.1952); Restatement, Second, Conflict of Laws § 332(b). The application of the parol evidence rule is essentially the same in New Jersey and Arizona as in New York.[3] We, accordingly, will use New York law as the model to determine whether the oral agreements alleged may be proved in the face of the written leases.

The New York Court of Appeals has consistently recognized the policy implicit in the parol evidence rule—the *prevention* of false oral claims and the finality of integrated transactions—"on the whole it works for good." Mitchill v. Lath, 247 N.Y. 377, 380, 160 N.E. 646 (1928).

In that famous ice house case the Court held unenforceable an oral promise to remove an ice house across the road which the buyer of the land opposite found objectionable. It was assumed that the oral promise induced the contract of purchase. Yet it was held unenforceable because the promise did not meet the three following conditions: "(1) The agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing." Mitchill v. Lath, *supra*, 247 N.Y. at 381, 160 N.E. at 647. In other words, "it must not be so clearly connected with the principal transaction as to be part and parcel of it." (*Id.*)

Here we do not even have a collateral agreement in form. The promises said to have been broken are promises that are an integral part of the obligations

---

2. The class allegations have been eliminated from the recital, since there is no determination yet of the class action phase and it is not considered relevant on this motion. The class in Count I is alleged to consist of all the tenants of the defendants in all their shopping centers, and the class damages are alleged to aggregate at least $500,000,000 in Count I.

3. Harker v. McKissock, 12 N.J. 310, 96 A.2d 660 (1953); Atlantic Northern Airlines v. Schwimmer, 12 N.J. 293, 96 A.2d 652 (1953); Childs v. South Jersey Amusement Co., 95 N.J.Eq. 207, 122 A. 803 (1923); Naumberg v. Young, 44 N.J.L. 331 (1882); Richards Development Co. v. Sligh, 89 Ariz. 100, 358 P.2d 329 (1961); McNeil v. Attaway, 87 Ariz. 103, 348 P.2d 301 (1960).

ascribed to the landlord in the operation of the lease. That the landlord would aid the tenants' businesses, advertise on their behalf, pick good tenants as their neighbors, let them have some say in the management of the shopping center, provide security against theft and keep the place clean are the kinds of promises which directly affect the lease as much as the supply of fuel and hot water or snow removal. One would expect the promise if made to be written down along with the other written promises.

The New York Court of Appeals reiterated the familiar doctrine of Mitchill v. Lath, *supra,* in Fogelson v. Rackfay Construction Co., 300 N.Y. 334, 90 N.E. 2d 881 (1950). There tenants of two apartment houses alleged that the landlord orally promised that they would be furnished free bus service to the public school and to the subway. The Court held the oral promise by the landlord unenforceable because of the parol evidence rule. It said again that "where landlord and tenant enter into a lease, it is reasonable to expect that it 'contain the engagements of the parties, and . . . define the object and measure the extent of such engagement'. Eighmie v. Taylor, 98 N.Y. 288, 294–295."

■ Two important considerations emerge from the New York authorities: (1) even if the oral promise was an inducement for the execution of the written lease, that circumstance does not exempt it from the parol evidence rule (Mitchill v. Lath, *supra*); and (2) whether the oral matter touches so closely on the landlord-tenant relationship that one would normally expect it to be written in the lease is a matter of law for the Court, not the jury.

■ Given these rules of law, the Court on a motion to dismiss must determine whether the parol evidence rule applies as a matter of law. There is no point to awaiting trial if that be the case. Boro Hall Corp. v. General Motors Corp., 164 F.2d 770 (2 Cir. 1947); American Cyanamid Co. v. Elizabeth Arden Sales

Corp., 331 F.Supp. 597, 603 (S.D.N.Y. 1971). While it is true that on occasion, as Professor Corbin has suggested, oral evidence may be taken to determine whether oral evidence should be received (3 Corbin, Contracts § 573 (1960); see also Eskimo Pie Corp. v. Whitelawn Dairies, Inc., 284 F.Supp. 987 (S.D.N.Y. 1968)), there seems to be no preliminary question of fact here that requires the taking of testimony. Every one of the claimed promises is a proper and expectable term of a shopping center lease. Their omission is fatal to the contract claim.

Similarly, that the defendants represented that they were experts in shopping centers, and that the shopping centers were in prime locations does not make the representations actionable. It would create havoc in the reasonable negotiation of leases between landlords and prospective tenants if this kind of representation were held to have absolved the tenants from making their own prudent inquiries into the advantages or disadvantages of the particular shopping center.

■ Since the parol evidence rule is a bar to adding the alleged terms to the leases, the first count, so far as it sounds in contract, must be dismissed. The question remains whether a defeated plaintiff in contract by using the language of tort may nevertheless sustain the complaint. The complaint should not be dismissed if the plaintiff can prevail on any theory. Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1947); Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920, 925 (2 Cir. 1968). See also Radovich v. National Football League, 352 U.S. 445, 453, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957). Here the issue is one of substantive law. Does the mere allegation that the defendants never intended to keep the oral promise, which has just been declared unenforceable, save the complaint from dismissal? Negligence or oversight alone would obviously not overcome the exclusionary policy of the parol evidence rule. If actual fraud is properly al-

leged, however, that does entitle the plaintiff to a trial of the issue.

■■■■■ The type of fraudulent act which the plaintiff contends was committed by the defendants is recognized as actionable under the respective laws of Arizona, New Jersey and New York. Caldwell v. Tilford, 90 Ariz. 202, 367 P.2d 239 (1962); Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J.Super. 369, 164 A.2d 607 (App.Div.1960); Sabo v. Delman, 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957). See also Restatement, Torts, §§ 525, 530. As the New York Court of Appeals has succinctly stated, "a contractual promise made with the undisclosed intention not to perform it constitutes fraud." Sabo v. Delman, supra, at 162, 164 N.Y.S.2d at 718, 143 N.E.2d 909. See also Adams v. Gillig, 199 N.Y. 314, 319, 92 N.E. 670 (1910). The Court of Appeals for this Circuit has interpreted that to mean that even " 'collateral' promises not reduced to writing" fall within the Sabo doctrine. Perma Research & Development Co. v. Singer Co., 410 F.2d 572, 575–576 (2 Cir. 1969). Although in Sabo the plaintiff demanded only rescission as its remedy, a claim for money damages is recognized as one of the alternative forms of relief to which one who has been fraudulently induced to enter into a contract is entitled. Goldsmith v. National Container Corp., 287 N.Y. 438, 40 N.E.2d 242 (1942); Lusk Corporation v. Burgess, 85 Ariz. 90, 332 P.2d 493 (1958); Bilotti v. Accurate Forming Corp., 39 N.J. 184, 188 A.2d 24 (1963). Moreover, a claim arising out of such a fraudulent inducement is considered to rest upon an independent tortious act. The plaintiff sues not for any breach of contract but for injuries suffered as a result of the defendants' conduct which is separate and distinct from the formal contract. Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 4 N.Y.2d 403, 151 N.E.2d 833, 176 N.Y.S.2d 259 (1958); Ocean Cape Hotel Corp. v. Masefield Corp., supra. Consequently, a party seeking to prove fraudulent inducement may introduce evidence which has the effect of varying the terms of a written contract, the parol evidence rule notwithstanding; Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959); Lutfy v. R. D. Roper & Sons Motor Co., 57 Ariz. 495, 115 P.2d 161 (1941); Ocean Cape Hotel Corp. v. Masefield Corp., supra.

■■■■ Knowing how easy it is to write "fraud" into a complaint, however, the drafters of the Federal Rules of Civil Procedure in order to check the proliferation of fraud claims arising out of frustrated contract actions, mandated that the plaintiff allege more than notice pleading would otherwise require. Rule 9, therefore, provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In the case at bar, the plaintiff has insufficiently alleged the circumstances of the fraud to sustain this complaint against dismissal. The allegation "known or should have known" is not by itself a compliance with Rule 9. See Merchant v. Davies, 244 F.2d 347, 348 (1957). Since, however, it may be possible for the plaintiff to plead a cause of action in fraud arising independently from the otherwise unenforceable promises of the defendants, the plaintiff is given leave to amend the first count to plead fraud in the inducement with particularity.

## II

The second count alleges that the terms of the leases show how the defendants "control and restrain trade in violation of the antitrust laws of the United States." It further alleges that the defendants have conspired with major full-line department stores in that the defendants have required the plaintiff (a) not to sell or advertise their goods at discount prices or at prices "below normal retail prices"; (b) to sell only such goods as the defendants prescribe; (c) not to open their stores except at prescribed hours; (d) to open them at prescribed hours; (e) to join

merchants' associations and pay dues fixed by the defendants; (f) to spend a specified percentage of their gross sales for advertising in a specified geographical area; (g) to pay certain operating charges fixed solely by the defendants; and (h) to refrain from operating any competitive business within a certain distance from the shopping centers "which distances are unreasonable and fixed and determined by the defendants."

It is further alleged that by virtue of an unlawful conspiracy with the full-line department store tenants, the defendants have engaged in unfair competition which "foreclose[s] competition in the resale and distribution at retail of goods and services." There is an additional charge that the defendants have discriminated against the plaintiff "in that different rental charges are made by the defendants for store spaces of like quality within the same shopping center." The result, according to the complaint, is that the plaintiff has suffered and will continue to suffer loss of substantial sales and profits and, in addition, will have to expend large sums of money as required by the defendants.

The relief sought under Count II is a declaratory judgment that the "restrictive and unlawful provisions of the leases" are "null and void and unenforceable, and that the class of plaintiffs should be awarded damages of not less than $200,000,000, to be trebled."

The violations of the antitrust laws claimed are of the Sherman Act, Section 1 (15 U.S.C. § 1) and the Robinson-Patman Act (15 U.S.C. § 13). The interstate element essential to jurisdiction is sought to be supported by the following allegations: (a) the defendants are engaged individually and in concert with others in interstate commerce in the development, ownership and control of shopping centers through various "sections of the United States," and they solicit tenants for their shopping centers throughout the State of New York; (b) "The flow of merchandise, goods and services from plaintiff's headquarters in Pennsylvania, its warehouse facilities in New Jersey, and other suppliers of Plum Tree merchandise throughout the country to the Plum Tree stores in defendants' malls via interstate carriers, telephone lines, postal services, as well as the payment of rent to defendants from Pennsylvania, have a substantial effect upon commerce."

It will be noted that there is no allegation that a substantial amount of the plaintiff's *retail* sales are interstate. It is this omission which the defendants urge is fatal to the Sherman Act claim.

### A

Before we consider that question, we may quickly dispose of the claim under the Robinson-Patman Act.[4]

■ The price discrimination prohibited is "between different purchasers of commodities of like grade and quality." The plaintiff suggests the novel theory that "commodities" embraces leaseholds in shopping centers and that, accordingly, the landlord must charge equal rent for equal space. No authority is cited for the proposition. The only argument advanced by the plaintiff is that a leasehold is personal property in some aspects of the law and, hence,

---

4. 15 U.S.C. § 13 reads, in relevant part, as follows:

"(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: . . . ."

is a "commodity" within the meaning of the Act. The analogy elides the Congressional purpose in the enactment. The legislative attack was on the practice of selling to large chain stores at prices below that charged others based solely on their buying power. The scope of the Act is suggested in one of the provisos of the section: "And provided further, That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade." Since the exception deals with *bona fides* it must be thought to embrace the whole scope of the Act. It can hardly be said that signing a lease for real property is "selling goods, wares, or merchandise" or that such a typical real estate transaction is itself "in commerce," regardless of whether the landlord or tenant may be. See Gaylord Shops, Inc. v. Pittsburgh Miracle Mile Town and Country Center, Inc., 219 F. Supp. 400 (W.D.Pa.1963), and cases cited.

### B

The motion to dismiss Count II of the complaint is made under Rules 12(b)(1) and 12(b)(6), but because an affidavit has been filed to show that the plaintiff's retail sales are almost wholly local in character, the motion may also be considered as one for summary judgment under Rule 56. On either type of motion the defendants cannot prevail without a trial of the issue.

The defendants rely on a line of cases which have held that alleged restraint of intrastate sales or intrastate services is insufficient to ground jurisdiction under the Sherman Act even though the parties themselves may have been engaged in interstate commerce. It is their contention that "the test of jurisdiction is not that the acts complained of affect a business engaged in interstate commerce, but that the conduct complained of affects the interstate commerce of such business." Page v. Work, 290 F.2d 323, 330 (9 Cir.), cert. denied, 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76 (1961). It is also suggested that restrictions within shopping center leases come under this doctrine. See Savon Gas Station No. 6, Inc. v. Shell Oil Co., 203 F.Supp. 529 (D.Md.), aff'd 309 F.2d 306 (4 Cir. 1962), cert. denied, 372 U.S. 911, 83 S.Ct. 725, 9 L.Ed.2d 719 (1963); St. Anthony Minneapolis, Inc. v. Red Owl Stores, Inc., 316 F.Supp. 1045 (D. Minn.1970); Gaylord Shops, Inc. v. Pittsburgh Miracle Mile Town and Country Center, Inc., *supra*.

The defendants concede, however, that there may be a "restraint of trade or commerce among the several states" if the restraint either occurs in interstate commerce or occurs in intrastate commerce and has a substantial effect upon interstate commerce. Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 (1948); Lieberthal v. North Country Lanes, 332 F.2d 269 (2 Cir. 1964).

We may agree that the leasing of space in a shopping center is intrastate in character, *Gaylord Shops, Inc., supra,* and that retail sales to consumers are not sales in interstate commerce, *Lieberthal, supra.* That still does not supply the answer.

It is true that where a transaction is intrastate in character, the mere incidental flow of supplies or of customers in interstate commerce does not change that character, *Lieberthal, supra.* On the other hand, the Supreme Court has instructed us that, for example, a wholesale division of markets among retailers selling intrastate could be a restraint of interstate commerce because competition might be reduced. Burke v. Ford, 389 U.S. 320, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967). That case was decided after the Second Circuit had decided *Lieberthal* in 1964. And the Court of Appeals, in *Lieberthal,* itself expressed the essentially factual distinction based on United States v. Employing Plasterers' Ass'n, 347 U.S. 186, 189, 74 S.Ct. 452, 456, 98 L.Ed. 618 (1954)

that while "the Sherman Act condemns wholly local business restraints that affect interstate commerce as well as restraints in interstate commerce" 332 F.2d at 272, the "effect of the local restraints on interstate commerce must be 'direct and substantial, and not merely inconsequential, remote or fortuitous.' Page v. Work, *supra*." 332 F.2d at 272.

A number of authorities may be cited to support the view that certain restraints on local retailers do have a substantial effect on interstate commerce. See e. g., Local 167 et al. v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804 (1934); United States v. Frankfort Distilleries, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945); Mandeville Island Farms v. American Crystal Sugar Company, *supra*. As the Court said in United States v. Women's Sportswear Mfgrs. Ass'n, 336 U.S. 460, 464, 69 S.Ct. 714, 716, 93 L.Ed. 805 (1949), "If it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze."

 In short, the essence of the problem is sometimes *quantitative* rather than *qualitative*. We are dealing not with rigid rules of law but with amorphous patterns of economic impact upon interstate commerce. I must conclude, therefore, that this is not the type of antitrust case that lends itself to summary judgment. See Poller v. Columbia Broadcasting Co., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Radovich v. National Football League, 352 U.S. 445, 453, 77 S.Ct. 390, 1 L.Ed. 2d 456 (1957). From the nature of the allegations one may suspect that the plaintiff has a long row to hoe, but one cannot surmise conclusively that the field may not, in the end, be tillable.

Since the defendants have not suggested that the particular restraints alleged are reasonable we need not consider that on this motion and nothing in this opinion is directed to that question.

The motion to dismiss came before me in one of the last motion parts to be held under the central calendar system and I feel it my duty to decide it. The remaining motion concerning the determination of the class action is left for the Judge who now has the action assigned to him for all purposes, since it will be his responsibility to manage the litigation henceforth.

The motion to dismiss the claim for relief based on contract is granted without leave to replead. The claim for relief sounding in fraud is dismissed with leave to replead. The motion to dismiss the claim based upon an alleged violation of the Robinson-Patman Act is granted without leave to replead. The claim for relief under the Sherman Act is not dismissed since there is an issue of fact under the pleading which could possibly sustain a claim for relief. If the discussion in the opinion should prompt the plaintiff to amend the Sherman Act allegations, leave to file an amended complaint in this respect also is granted.