In the Matter of the Estate of WILLIAM DEVESON, Deceased.

Surrogate's Court, Westchester County, March 27, 1936.

*William G. Ross*, for the petitioners.

*Morgan & Lockwood* [*Richmond L. Brown* of counsel], for Emma K. Deveson, widow.

*Holt & Frost*, for the Tide Water Oil Company, creditor.

*Joseph W. Bryan*, for the Westchester Title and Trust Company, in liquidation.

*George L. Naught*, for the American Surety Company of New York.

*Hill, Lockwood & Redfield*, for Mabel L. Olmstead.

*Mortimer C. O'Brien*, special guardian.

SLATER, S. In this account of proceedings of the ancillary executors a question has arisen as to whether the domiciliary executors or the ancillary executors should have control of an asset consisting of money received from the sale of a bond and mortgage upon property in this State.

The decedent died a resident of Greenwich, Conn. His will received its original probate there and later ancillary probate was granted here with the issuance of ancillary letters. Among the assets in Westchester county is free and clear real property, and there was, at the time of death, a bond and mortgage which was subsequently sold, made by a New York resident upon New York real property. At the time of the testator's death *the bond was in Connecticut*, the mortgage was in Westchester county. *The mortgagor was a resident* of the State of New York.

The widow seeks to have the court declare that the bond and mortgage is a Connecticut asset. One of the executors is contending that it is a New York asset, pointing to section 47 of the Surrogate's Court Act as authority to sustain the contention. Counsel for the widow refers to *Beers* v. *Shannon* ([1878] 73 N. Y.

292) in support of their claim that the asset should be remitted to the Connecticut executors.

In *Beers* v. *Shannon* (*supra*) the bond was in the county; the obligor was a non-resident. It was claimed that the court was without jurisdiction because the obligor was a non-resident; that the bond was not an asset anywhere but in the county where the obligor resided at the time of the issuance of the letters. The court held that, with the bond within the county, although the obligor was a non-resident, the surrogate had jurisdiction. The decision turned upon the *location of the bond,* being within the State. This ruling was applied in *Williams* v. *Fischlein* (144 App. Div. 244, 247); *Matter of Hopper* (5 Dem. 242); Kings County, *Sulz* v. *Mutual Reserve Fund Life Association,* (7 Misc. 593, 594); *Buck* v. *Beach* (206 U. S. 392, 403); 18 Cyc. 72.

The decision in *Beers* v. *Shannon* (*supra*) has met revision and is obsolete as will be indicated.

The Revised Statutes gave the surrogate jurisdiction to grant letters upon decedents' estates where the decedent, *not being a resident of the State,* died without the State but left personal property within a county within the State. This statutory enactment is now known as section 45 of the Surrogate's Court Act.

Section 39 of the General Construction Law says in part: " The term personal property includes chattels, money, things in action, and all written instruments themselves, as distinguished from the rights or interests to which they relate."

Section 2478 of the Code of Civil Procedure, later section 2517 of the Code, now section 47 of the Surrogate's Court Act, enacted for the purpose of making a distinction in what should be classed as a debt and conferring jurisdiction upon a Surrogate's Court, says: " *a debt, owing to a decedent by a resident of the state,* is regarded as personal property situated within the county where the debtor * * * resides; * * *. *But the foregoing provision does not apply* to a *debt* evidenced by a bond, promissory note, or other instrument for the payment of money only, in terms *negotiable,* or payable to the *bearer or holder.*"

Thus jurisdiction is conferred upon the surrogate to grant letters, providing there is a *debt owing the decedent by a resident of the State of New York,* provided it is a debt evidenced by a *non-negotiable* instrument. The section does not apply to a debt in terms *negotiable* or payable to the bearer or others. The test of jurisdiction is now twofold, *i. e.,* residence of the obligor and non-negotiability of the instrument.

This raises the legal question of whether an ordinary mortgage bond, payable to the obligee, his executors, administrators or

assigns, accompanied by real estate security, is a non-negotiable instrument at the present time.

The ruling in *Beers* v. *Shannon* (*supra*) has been changed by the adoption of the Negotiable Instruments Law (Laws of 1897, chap. 612, as amd.). Section 20 sets out the form of negotiable instruments and one of the elements is: " 4. *Must be payable to order or to bearer.*" Thus, by statute, a mortgage bond, as in the instant case, becomes non-negotiable and becomes affected by section 47 of the Surrogate's Court Act. The court is given jurisdiction to operate upon such asset.

In passing, it is interesting to note that the Legislature, by chapter 84 of the Laws of 1871 and by chapter 595 of the Laws of 1873, provided that it shall be lawful for any owner of railway mortgage bonds (which then were negotiable) to render the same *non*-negotiable by the owner indorsing upon the same the statement that the said bond is *the property of such owner*.

It has been the policy of the Legislature to treat as non-negotiable instruments bonds and similar instruments containing the statement that they shall be only *payable to the owner*. Section 20 of the Negotiable Instruments Law conforms to this policy and now controls the definition of negotiable instruments.

In *Higgins* v. *Hocking Valley Railway Co.* (188 App. Div. 684, 694) it was held that certain forms of bonds were negotiable instruments within the meaning of section 20 of the Negotiable Instruments Law.

In *State Bank* v. *Central Mercantile Bank* (248 N. Y. 428, 431, 432) the opinion dealt with a certificate of deposit which states that Owen has deposited a certain amount of money "*payable only to himself* four months after date." The court wrote: " That the certificates were non-negotiable in form seems clear. They were not payable *to order or bearer* nor do their terms clearly indicate an intention that they should be. * * * They were payable only to Owen *himself* on the return of the certificates properly indorsed. *The words ' only to himself ' destroyed their negotiability.*" (Cases cited.) (Italics mine.)

In the instant case the bond is payable to the owner or his executors, administrators or assigns. These words create personal ownership and the instrument becomes non-negotiable.

In *Enoch* v. *Brandon* (249 N. Y. 263, 265) the question before the court was whether certain bonds were negotiable instruments (p. 266). The court wrote: " But no such statement will make negotiable a bond not in the form provided by our statute. Whether the result was or was not fortunate it is too late to argue that the Legislature did not refer to bonds in its all-inclusive definitions

of negotiable paper. True, to become negotiable an instrument need not follow any precise language. (Negotiable Instruments Law [Cons. Laws, chap. 38], § 29.) But it ' must conform ' to the definition specified in section 20. In the face of a command so explicit we must adhere to the design of the Legislature. (*Amer. Nat. Bank* v. *Sommerville,* 191 Cal. 364.) At times contract rights may be enforced or some theory of estoppel adopted, but no intention, no agreement, may make negotiable an instrument which the statute declares to be non-negotiable.

" We turn, therefore, to the more serious question. The statute deals with the form of the instrument — with what a mere inspection of its face should disclose. It must contain an unconditional promise to pay a fixed sum, on demand, or at a fixed or determinable future time, to order or to bearer. Only if it fulfills these requirements is it negotiable. * * *

" Provisions other than those required by section 20 may be contained in a bond or note without impairing its negotiability."

I hold that the mortgage bond in the instant case was a non-negotiable instrument falling within the provision of section 47 of the Surrogate's Court Act. It follows that it was an asset of the estate to be administered by the ancillary executors appointed by this court.

Proceed accordingly.