Richard W. Wallach, J.
There are times when stubborn facts refuse to be put down by those useful legal principles which bring stability to written instruments. This action by a bank, to enforce what appears on its face to be an unconditional guarantee, is such a case.
Plaintiff bank has contended that on August 19, 1969, its customer, Alfred Botwin, was in substantial default upon an $8,676 installment loan, and that he was otherwise indebted to the bank in excess of $25,000. To induce the bank to forbear acceleration of the due date and the commencement of this action, the bank claims it demanded and obtained delivery at that time of the personal guarantee of Alfred’s present wife, Mrs. Dale Botwin. The guarantee form signed by her contains provisions which would ordinarily bar proof of any agreements, conditions, or modifications not expressed in the writing which would diminish her absolute obligation to repay all sums due the bank from Alfred following his conceded default.
The court finds the following facts: Dale is the second Mrs. Botwin. In May, 1969, with the traditional energy of a woman scorned, the first and now ex-Mrs. Botwin had caused the appearance on Dale’s doorstep of a deputy sheriff of Rockland County, who had in hand a commitment order for alimony arrears which could only be satisfied by the payment of $6,000, or the body of Alfred. To forestall the second grim alternative, Alfred attempted to negotiate a loan in this amount from plaintiff bank in addition to his substantial existing borrowing, and Dale agreed to and did deliver an undated guarantee instrument in consideration of the prospective $6,000 new advance only.
Dale signed and delivered the guarantee seated in her automobile outside the bank to Joseph C. Rogers, the officer who acted for the bank and who accepted the instrument completely *1087 in blank except for the signature of Dale. The paper contains no reference whatever to the new loan, which in fact was never made. For once again, in the next day or so, the energetic first Mrs. Botwin had struck — this time with some form of notice or levy on the bank, which caused it to decline the new loan. The guarantee, thereupon forgotten by Alfred and Dale, continued, however, to repose in the bank’s files.
The paper was resurrected by Rogers after an unpleasant meeting in November, 1969, between Alfred, and his business associate, Edward J. Goldstone on the one side, and Rogers, Albert Kivelson, chairman, and other bank officers on the other. Alfred testified that at this meeting the bank officers became angry at the business reversals of his company, Central Structural Steel Co., Inc., and the fact that the company had commenced chapter XI proceedings without forewarning to the bank. Some harsh words were exchanged, and thereupon Rogers rebuked Alfred, and told him, in effect, that the bank would punish him by appyling the guarantee paper signed by Dale, and forgotten by him, against her for the entire amount of his indebtedness to the bank.
This conversation was corroborated by Goldstone and not denied by any officer attending the meeting on behalf of the bank. The only witness produced by the bank was a subordinate employee merely to identify records. Although Mr. Rogers had retired from the bank the very week of trial, it was conceded that he was physically available to testify. Nevertheless, he did not do so.
The court also finds that shortly after this abrupt volte-face, either Rogers or some other person at the bank fraudulently inserted the date of August 19, 1969 on the back of the instrument in order to link it to the time when Albert had defaulted in the installment payments of his outstanding loan, and to buttress the specious claim that the guarantee was delivered in consideration of forebearance to commence collection. It should be noted that the exclusionary effect of the parol evidence rule never extends to the date of an instrument, which may always be impeached (Draper v. Snow, 20 N. Y. 331, 333). The date of the guarantee here is, of course, a decisive issue. The bank’s own meagre internal memoranda, offered in support of its date claim, seem at best ambiguous, and when carefully considered, contrived after-the-fact artifacts, more suspicious than persuasive.
As to the applicable law, it is doubtful whether Dale’s second pleaded defense of failure of consideration can prevail. The loans advanced to Alfred by the bank prior to May, 1969, are sufficient to sustain the guarantee on this score where, as here, *1088 there is a reference to the past indebtedness of the principal obligor in the writing (General Obligations Law, § 5-1105). Inasmuch as the writing states that it is the entire argeement of the parties, and further prohibits, by its terms, any oral enlargement or modification, the same statute (General Obligations Law, § 15-301) would render ineffective any alleged oral executory agreement in conflict with its absolute terms.
Dale has also failed to sustain the first pleaded defense of fraud in the inducement, since there was no proof of any misrepresentation at the time Dale delivered the paper, and clearly the bank’s refusal to extend the additional $6,000 loan to Alfred in May, 1969, was triggered by the notice from the first Mrs. Botwin two days after delivery of the guarantee.
The only defense which this court upholds is that of estoppel, which was asserted by way of amendment of the answer at trial. Leave to amend was granted in the interests of justice, since surprise as to the facts of the defense could not fairly be claimed by the bank, in view of the factual allegations contained in the answer prior to amendment.
It has been held in a bank’s action on a guarantee that “ the theory of estoppel would seem available ” (Meadow Brook Nat. Bank v. Feraca, 33 Misc 2d 616, 619), even where the predecessor statute section 15-301 of the General Obligations Law (Personal Property Law, § 33-c) was specifically invoked. A Federal court has observed that ‘ ‘ New York cases construing sec. 15-301 have held that a party can be estopped by his own conduct from claiming the benefit of the statute.” (Becker Pretzel Bakeries v. Universal Oven Co., 279 F. Supp. 893, 898). While this case seems clearly to fall within the ambit of estoppel, “ The truth is that we are facing a principle more nearly ultimate than either waiver or estoppel, one with roots in the yet larger principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong ” (Cardozo, J., concurring in Imperator Realty Co. v. Tull, 228 N. Y. 447, 457).
To be sure, it has been held as a matter of public policy that the customer of a bank who ‘ ‘ executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced ” (Mount Vernon Trust Co. v. Bergoff, 272 N. Y. 192, 196). But Mount Vernon is readily distinguishable, since there the borrower participated in creating two directly contradictory writings, hoping to benefit from the exculpatory agreement, and simultaneously contributing to a deception of the bank’s auditors with the apparently binding writing. *1089 In this case the fraud begins and ends with the party seeking affirmative enforcement.
Accordingly, plaintiff’s second cause of action against defendant Dale Botwin is dismissed. Plaintiff may enter judgment against defendant Alfred Botwin, who has interposed no defense, for the relief demanded in the complaint.