In re Barbara R. LEVINE, Debtor.

LINCOLN FIRST BANK, N.A., Plaintiff,

v.

BANK OF NEW YORK, Bankers Trust Co., David & Joan Mykoff, Citytrust, Manufacturers Hanover Trust Co., Jeffrey Sapir and Barbara Levine, Defendants.

Bankruptcy No. 81 B 20459.
82 Adv. 6085.

United States Bankruptcy Court,
S. D. New York.

Sept. 30, 1982.

Farrauto, Berman & Fontana, Yonkers, N.Y., for Lincoln First Bank, N.A.

Mario Giovannelli, Tarrytown, N.Y. for Bank of New York.

Winick & Rich, P. C., New York City, for Citytrust.

Jeffrey L. Sapir, Yonkers, N.Y., Chapter 13 Trustee.

Dublirer, Haydon, Straci & Victor, New York City, for debtor.

Michael H. Ganz, Woodbury, N. Y., for Mfrs. Hanover Trust Co.

Charles Leeds, New York City, for Bankers Trust Co.

## DECISION ON COMPLAINT TO DETERMINE THE EXTENT AND VALIDITY OF LIENS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff Lincoln First Bank, N.A., commenced an adversary proceeding pursuant to R701 of the Rules of Bankruptcy Procedure to determine the validity, priority and extent of several liens entered against the debtor's property. Lincoln First challenges as unenforceable a subordinate mortgage taken by the debtor's brother-in-law and his wife (the Mykoffs) on the residence owned by the debtor and her husband (the Levines) and thereafter assigned to Bankers Trust Co. By undermining the assignee's secured status, Lincoln First will enhance its own position by moving up one rung on the creditor ladder. Bankers Trust asserts that it is fully secured by the assigned mortgage. Thus the issue presented for determination is whether the Mykoff's mortgage is enforceable and what status should be accorded to its holder.

### FACTS

1. The debtor, Barbara R. Levine, filed a Chapter 13 petition for relief on June 29, 1981 pursuant to the Bankruptcy Reform Act of 1978, 11 U.S.C. § 1301 et seq.

2. A hearing was held in this court in connection with an adversary proceeding filed by the plaintiff, Lincoln First Bank, N.A., in accordance with Bankruptcy Rule 701, to determine the extent, validity and priority of various liens which purportedly encumber the debtor's estate, thereby resolving a disagreement among the creditors as to who in fact are the secured claim holders.

3. Dr. David Mykoff is the debtor's brother-in-law and during the years 1959–1976, he and his wife, Joan, made several advances to the Levines, totalling approximately $54,000. The payments were made either directly to the Levines, or to the Berkshire Hills Camp (a business venture the Mykoffs engaged in with Morris Levine and N. Reich, another brother-in-law), or Uranus Electronics, Inc. (Morris Levine's business). Simultaneously with the first two advances, the Mykoffs took back promissory notes, signed by Morris Levine. After these first two advances, no further promissory notes were executed to correspond with the advances made.

4. On September 2, 1976, the Levines executed a mortgage bond, under the terms of which they promised to pay to the Mykoffs the amount of $54,000, due on September 2, 1977, with interest accruing at 8% per year, to be paid October 2, 1976, and monthly thereafter.

5. As security for the payment of the indebtedness, on September 2, 1976, the Levines also executed a mortgage on their residence in Scarsdale, New York. The mortgage was duly recorded on September 22, 1976 and is subject to a first mortgage lien held by the North American Reassurance Company (NARC) by assignment from the County Trust Company (now the Bank of New York). The Bank of New York is the servicing agent for NARC.

6. One payment was made towards the indebtedness with a check dated February 9, 1978, in the amount of $19,025.00 drawn on the attorney account of Dublirer, Haydon & Straci. The check was signed by Mr. Harold Dublirer, a partner of Mr. Haydon, who was the attorney for Uranus Electronics, Inc.

7. On October 14, 1979, the Mykoffs assigned the bond and mortgage to Bankers Trust Co. They endorsed the bond with the words "Pay to the order of Bankers Trust Company Without Recourse". On the same day, the Mykoffs also executed an hypothecation agreement and a separate affidavit which asserts that the bond and mortgage had not been previously assigned, sold, transferred or hypothecated, and that the principal amount due and owing was $54,000. In return for the assignment, Bankers Trust entered into an extension agreement with the Levines, under the terms of which Bankers Trust agreed to forbear from enforcing against the Levines two promissory notes, dated February 9, 1979, in the amount of $7500 plus accrued interest and March 8, 1979, in the amount of $37,500 plus accrued interest.

8. The Mykoffs have not filed a claim against the debtor in the Chapter 13 bankruptcy proceeding.

### DISCUSSION

The plaintiff challenges the mortgage which the Mykoffs assigned to Bankers Trust, contending that when the debtors mortgaged their home on September 2, 1976, promising to repay the Mykoffs $54,000, there was no real indebtedness to which the mortgage related. The plaintiff asserts that the advanced funds were intended as gifts, and the purported mortgage is a sham. Alternatively, plaintiff argues that the Mykoffs gave no legal consideration for the transaction, as there were no new funds advanced at the time the bond and mortgage were executed; that the consideration was past consideration, namely the antecedent loans made to the Levines between 1959–1976, which cannot serve as legal consideration for a mortgage executed well after the last funds were advanced.

If the original mortgage transaction were unenforceable, the plaintiff argues that the assignee would be in no better position than its assignor, and the mortgage would remain unenforceable even in the hands of the assignee, leaving Bankers Trust in an unsecured status while enhancing the plaintiff's position in relation to the other creditors.

### The Plaintiff's Standing to Attack the Assignee's Mortgage

█ It has long been the law of New York that the assignee of a mortgage takes subject to any defenses existing in favor of the mortgagor which existed against the mortgagee/assignor. *Beck v. Sheldon,* 259 N.Y. 208, 181 N.E. 360 (1932); *American Guild of Richmond, Virginia v. Damon,* 186 N.Y. 360, 78 N.E. 1081 (1906); *Davis v. Bechstein,* 69 N.Y. 440 (1877); *Ingraham v. Disborough,* 47 N.Y. 421 (1872). As the court stated in *Trustee's of Union College v. Wheeler,* 61 N.Y. 88, 104 (1874):

> "It is well settled that an assignee of a mortgage must take it subject to the equities attending the original transaction. If the mortgagee cannot himself enforce it, the assignee has no greater rights."

██ In the instant case, the plaintiff is not one of the original parties to the mortgage, i.e., the mortgagor or mortgagee/assignor, and thus it might be argued that the plaintiff as a third party has no standing to challenge the mortgage held by the assignee, Bankers Trust. However, not only is an assignee subject to the equities or defenses in favor of the mortgagor, he is also subject to any latent equities that may exist in favor of unknown third parties. *Bush v. Lathrop,* 22 N.Y. 535 (1860). Prior to *Bush,* courts had held that the assignee was subject only to the equities between his assignor and the debtor, and not those existing in favor of third parties. However, *Bush* overturned that theory, and is controlling in New York today. See, *Schafer v. Reilly,* 50 N.Y. 61 (1872); *Briggs v. Langford,* 107 N.Y. 680, 14 N.E. 502 (1887); *Kommel v. Herb-Gner Constr. Co.,* 256 N.Y. 333, 176 N.E. 413 (1931); *Liebowitz v. Arrow Roofing Co.,* 259 N.Y. 391, 182 N.E. 58 (1932).

### The Mykoff-Levine Transactions: Loans or Gifts?

The purported loans made by the Mykoffs to the Levines spanned the years from 1959 through 1976, totalling approximately $54,000 of which $19,025 was repaid in February, 1978, for a net loan total of approximately $35,000. The plaintiff seeks to characterize these transactions as gifts in an attempt to render unenforceable the bond and mortgage executed on September 2, 1976, the terms of which promised repayment of the funds advanced by the Mykoffs. In November, 1959, when the first two purported loans were made, the Mykoffs took back promissory notes signed by Morris Levine, but after that time no further notes were executed. The arrangements for repayment appear rather unstructured; there was no agreement as to when the loans were due or whether interest would accrue. However, Dr. Mykoff testified that although he never made a formal written or oral demand for repayment, there was an understanding between the parties that repayment would occur as funds became available. Perhaps the informality surrounding the transactions is understandable, in light of the fact that Dr. Mykoff is the debtor's brother-in-law. Dr. Mykoff stated that he became concerned about the funds shortly after a check in the amount of $14,000 was advanced in June, 1976, to Uranus Electronics, Inc. at Morris Levine's direction. The mortgage and bond were executed approximately 3 months later. One substantial repayment towards the mortgage was made in February, 1978, although Dr. Mykoff admitted that it was not altogether clear to him how that figure was arrived at or why it was drawn on the attorney account of Mr. Dublirer, who is a partner of Mr. Haydon, counsel for Uranus Electronics, Inc. The transactions that accrued over the years were reconstructed by Dr. Mykoff's attorney and the debtor, since no formal records had been maintained during that time. Dr. Mykoff also admitted during testimony adduced at the hearing

that he would never commence legal proceedings against the Levines for repayment, and in fact he has not even filed a claim in the bankruptcy proceeding.

■■ If in fact there were no real obligation owed, the mortgage would have no vitality. *Baird v. Baird,* 145 N.Y. 659, 664, 40 N.E. 222 (1895). Notwithstanding the dearth of diligence and formality surrounding the purported loan transactions, there is no basis to conclude by a preponderance of the evidence that the funds advanced were gifts and not loans. There was no rebuttal to Dr. Mykoff's testimony regarding the Levines' indebtedness or challenge to the "understanding" he alluded to, that full repayment was expected when funds were available; nor was there any evidence that the Levines had no intention to repay the amounts advanced. Moreover, the debtor listed the Mykoffs as creditors in the schedules attached to her Chapter 13 petition. There has been a less than rigorous attention to formalities, the parties' memories have been dulled by lapsed time and they are linked by familial ties, yet these three factors do not suffice, in this case, to rebut the evidence that the funds were advanced as loans. Therefore, the plaintiff cannot defeat the mortgage on the theory that the advances which the mortgage secured were gifts and that there existed no real indebtedness between the Mykoffs and the Levines.

### Consideration

■ There is no requirement of legal consideration to support a mortgage, *Bucklin v. Bucklin,* 1 Abb.Dec. 242, 247 (1864), however, the underlying obligation for which the mortgage is given as security must be supported by consideration, so that if an indebtedness later proves unenforceable for want of consideration, the mortgage falls with it. As the court stated in *Baird v. Baird,* 145 N.Y. 659, 664, 40 N.E. 222, 227 (1895):

> "It is the debt which gives the mortgage vitality as a charge upon the land, and generally, when there is no debt or obligation, there is no subsisting mortgage."

Thus, in the case *Beck v. Sheldon,* 259 N.Y. 208, 181 N.E. 360 (1932) which is often cited as holding that a mortgage is unenforceable for want of consideration, (and was in fact cited for that proposition at page 13 of plaintiff's post-trial memorandum), the mortgage was actually unenforceable because it secured no existing debt; the debt purported to be secured was "a mere shifting of securities." 259 N.Y. at 210, 181 N.E. 360.

Therefore, it is the underlying indebtedness which in this case is evidenced by a mortgage bond, signed by the debtor and her husband in favor of the Mykoffs, and in turn assigned to Bankers Trust, which must be proven to be supported by legal consideration in order for Bankers Trust to sustain its argument that its claim against the debtor is fully secured by the assigned mortgage.

### Past Consideration

■ Something given before a promise is made and therefore, without reference to it, is not by itself legal consideration for the promise. *Pershall v. Elliott,* 249 N.Y. 183, 163 N.E. 554 (1928). Under New York's Recording Statute, N.Y.R.P.L. § 291, a mortgage bond must have valuable consideration supporting it to sustain the accompanying mortgage's priority over a subsequently recorded interest. Certainly an antecedent debt is not valuable consideration within the meaning of the Recording Statute. *Groves v. George,* 123 N.Y.S.2d 192 (Sup.Ct.1953). Even if the mortgagee takes in good faith without knowledge of the prior interest, he will not be given priority if there is no valuable consideration for the interest he acquires. As the court stated in *Groves,* 123 N.Y.S.2d at 194:

> "The court finds that the plaintiff acquired title in good faith without notice of the prior unrecorded mortgage and that she did not, at the time of the taking of the deed, give a valuable consideration within the purview of the [recording statute]. At the time the deed was given for a preexisting debt, no assumption of obligation was made nor was anything of

value given at the time of the conveyance. The plaintiff did not change her position by anything of value at that time. Under the law of this state, a preexisting debt is not a valuable consideration within the meaning of the recording act .... Therefore, the mortgage was not cut off by the deed."

Therefore, since the consideration given for the subject mortgage bond was past consideration (the funds already advanced between 1959–1976) the bond and the mortgage securing it would appear unenforceable. However, before reaching such a conclusion too rapidly, there must be a discussion of New York General Obligations Law § 5–1105 (McKinney 1968) which may serve to rescue the mortgage bond from unenforceability. The statute provides:

"WRITTEN PROMISE EXPRESSING PAST CONSIDERATION.

A promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, *if the consideration is expressed in the writing* and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed." [Emphasis added].

There have been several cases construing the requirement that past consideration be expressed in the writing. *Weyerhaeuser Co. v. Gershman,* 324 F.2d 163 (2d Cir. 1963); *American Bank v. Lichtenstein,* 48 A.D.2d 790, 369 N.Y.S.2d 155 (1st Dept. 1975); *Central State Bank v. Botwin,* 66 Misc.2d 1085, 323 N.Y.2d 74 (Civil Ct. 1971) rev'd on other gds, 71 Misc.2d 1012, 337 N.Y.S.2d 856 (Sup.Ct., App.Tm.1972); *Chester Airport, Inc. v. Aeroflex,* 37 Misc.2d 145, 237 N.Y.S.2d 752 (Sup.Ct.1962), modified on other grounds, 18 A.D.2d 998, 238 N.Y.S.2d

715 (Sup.Ct., A.D.1963). The written document must clearly refer to the past indebtedness of the principal obligor in the writing. *Perisco Oil Co., Inc. v. Levy,* 64 Misc.2d 1091, 316 N.Y.S.2d 924 (Sup.Ct. 1970); *Sarama v. John Mee, Inc.,* 102 Misc.2d 132, 422 N.Y.S.2d 582 (Civil Ct. 1979). The court in *Perisco, supra,* discussed the lack of clarity of a particular reference to past consideration at 316 N.Y. S.2d 925:

"Literally, the verb 'express' means exact, precise; to state directly and distinctly .... [T]he language used by defendant could refer to any debt or obligation that might exist between the parties. Even if the verb 'express' should be loosely considered a synonym of 'described' the writing is wanting in detail sufficient to even create an image of the consideration."

In the same vein, the *Samara* court, *supra,* stated at 422 N.Y.S.2d 583:

"The General Obligations Law does not require the use of the talismanic words 'in consideration of'. It is sufficient if the writing refers to the consideration, here, past services and couples that recitation with the promise to pay."

◼ In the instant case, the language of the mortgage bond merely reflects an obligation of the Levines to pay the Mykoffs the sum of $54,000 plus interest.[1] There is no recitation of, or reference to, the past consideration received by the Levines in return for their promise in the mortgage bond to pay an obligation. There is no reference in the document to any "funds already received" or some phrase of a similar nature that would sufficiently serve as an "expression" of the consideration received for the promise. The recitation of the amount owed is merely prima facie

---

1. The bond states in pertinent part:
 "Know all men by these presents, that Morris M. Levine and Barbara R. Levine ... hereinafter designated as the obligor, does hereby acknowledge the obligor to be justly indebted to David Mykoff and Joan Mykoff ... hereinafter designated as the obligee, in the sum of FIFTY FOUR THOUSAND dollars ... which sum said obligor does hereby covenant to pay the said obligee, and the executors, administrators, successors or assigns of the obligee, on September 2nd, 1977, with interest thereon to be computed from the date hereof at the rate of eight (8%) per centum per annum and to be paid on the 2nd day of October, 1976, next ensuing and monthly thereafter."

evidence that there was consideration given in return for the mortgage bond; it reveals no clue as to whether the consideration was present or past. Since the plaintiff has challenged the bond, arguing that there was only past consideration, which is borne out by the evidence presented in this court, then clearly the requirements of N.Y.G.O.L. § 5–1105 must be satisfied or the past consideration will prove fatal to the mortgage bond. As the bond does not refer to or express the past consideration received by the Levines, it fails to satisfy the statute; the bond is devoid of legal consideration and is therefore unenforceable, unless another statutory provision will prevent such a result.

*Is the Bond A Negotiable Instrument?*

If the bond in question were a negotiable instrument, the lack of legal consideration supporting it would not affect Bankers Trust's secured status as assignee of the mortgage. New York's Uniform Commercial Code (U.C.C.) § 3–408 states in pertinent part:

"§ 3–408. Consideration

Want or failure of consideration is a defense as against any person not having the rights of a holder in due course (Section 3–305), except that no consideration is necessary for an instrument or obliga-

tion thereon given in payment of or as security for an antecedent obligation of any kind."

 The use of the word "instrument" in the statute means a negotiable instrument, N.Y.U.C.C. § 3–102(1)(e). Thus, an antecedent debt is sufficient consideration for the execution of a *negotiable instrument,* even if the holder of the instrument does not have the rights of a holder in due course. Here, the assignee does not have the rights of a holder in due course [2] and therefore would ordinarily be subject to the defense of want or failure of consideration [N.Y.U.C.C. § 3–306(c)]; however, if the bond is a negotiable instrument, N.Y.U.C.C. § 3–408 would resolve any problem regarding the consideration.[3] In light of the foregoing, it is crucial to determine the character of the mortgage bond which was endorsed over and assigned to Bankers Trust.

 A negotiable instrument is one that meets the standards set out in N.Y.U.C.C. § 3–104.[4] It is § 3–104(1)(d) that is of concern here; a writing, to be negotiable, must "be payable to order or to bearer" [see N.Y.U.C.C. § 3–110 and § 3–111]. The mortgage bond in question does not contain such language,[5] and therefore cannot be a

---

**2.** In this case, Bankers Trust is not a holder in due course because N.Y.U.C.C. § 3–302(1)(c) requires that the instrument be taken without notice that it is overdue. § 3–304(3)(a) states that a "purchaser" [see, § 1–201(33) and § 1–201(32)] has notice that an instrument is overdue if he has reason to know that any part of the principal amount is overdue. Bankers Trust would have been on notice that the mortgage bond was overdue, since the face of the document reflects a maturity date of September 2, 1977, while the assignment of the bond and mortgage to Bankers Trust occurred in October, 1979. N.Y.U.C.C. § 1–201(25)(a) and (c) state respectively, that a person has "notice" of a fact when he has actual knowledge of it or when from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

**3.** The fact that N.Y.G.O.L. § 5–1105, which requires past consideration to be expressed in the writing signed by the promisor, was not satisfied, would not detract from the effect of N.Y.U.C.C. § 3–408 which does not require consid-

eration where a negotiable instrument is given to secure an antecedent obligation. *First National City Bank v. Valentine,* 61 Misc.2d 554, 306 N.Y.S.2d 227 (Sup.Ct.1969), rearg. denied, 62 Misc.2d 719, 309 N.Y.S.2d 563 (Sup.Ct. 1970).

**4.** § 3–104. Form of Negotiable Instruments; "Draft"; "Check"; "Certificate of Deposit"; "Note"

(1) Any writing to be a negotiable instrument within this Article must

(a) be signed by the maker or drawer; and

(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer.

**5.** See footnote # 1, *supra.*

negotiable instrument.[6] In the case of *In re Deveson's Estate,* 158 Misc. 868, 287 N.Y.S. 98 (Surr.Ct.1936), the court addressed the issue of whether an ordinary mortgage bond, payable to the obligee, his executors, administrators, or assigns, accompanied by real estate security, is a negotiable instrument. (This language is identical to that used in the subject mortgage bond). Citing the former Negotiable Instruments Law, § 20(4) [now incorporated in the N.Y.U.C.C.], which was in accord with the U.C.C. requirement that the instrument be payable to order or bearer, the court concluded, "[t]hus, by statute, a mortgage bond, as in the instant case, becomes nonnegotiable." 287 N.Y.S. at 101. In *Enoch v. Brandon,* 249 N.Y. 263, 265–6, 164 N.E. 45, 46 (1928) the court stated:

"True, to become negotiable an instrument need not follow any precise language ... But it 'must conform' to the definition specified in Section 20. [Section 20 of the N.I.L., now U.C.C. § 3–104]. In the face of a command so explicit we must adhere to the design of the Legislature .... We turn, therefore, to the more serious question. The statute deals with the form of the instrument— with what a mere inspection of its face should disclose. It must contain an unconditional promise to pay a fixed sum, on demand, or at a fixed or determinable future time, to order or to bearer. Only if it fulfills these requirements is it negotiable."

The fact that the Mykoffs endorsed the bond with the words "payable to the order of Bankers Trust Company without recourse" does not change the inherent character of the bond. "[N]o intention, no agreement, may make negotiable an instrument which the statute declares to be nonnegotiable." *Enoch v. Brandon,* 164 N.E. at 46. See also, *Felin Associates, Inc. v. Rogers,* 38 A.D.2d 6, 326 N.Y.S.2d 413 (Sup.Ct. A.D. 1st Dept. 1971).

Accordingly, it must be concluded that the subject mortgage bond is not a negotiable instrument, and that N.Y.U.C.C. § 3–408 cannot operate to excuse the lack of legal consideration. The bond which the Levines executed and gave to the Mykoffs, evidencing their promise to pay an antecedent debt is unenforceable, and therefore the accompanying mortgage falls with it. Since the assignee, Bankers Trust, holds an unenforceable bond and mortgage (its position can be no better than that of its assignor), its claim is rendered unsecured.

### CONCLUSIONS OF LAW

1. The funds advanced by the Mykoffs to the Levines constituted loans upon which repayment was anticipated.

2. The N.Y.G.O.L. § 5–1105 was not satisfied by the language included in the mortgage bond.

3. The mortgage bond is not a negotiable instrument.

4. The mortgage bond is not supported by legal consideration, since it was executed in relation to an antecedent debt, and is therefore unenforceable. the accompanying mortgage securing the indebtedness is also unenforceable, since it is the underlying obligation which gives the mortgage its vitality. The mortgage is only as enforceable as the debt it secures.

In light of the foregoing facts and conclusions of law, the court will set a hearing to determine whether the debtor's unsecured debts are less than $100,000, so as to qualify her as a debtor under Chapter 13 within the meaning of Bankruptcy Code § 109(e).

SUBMIT ORDER ACCORDINGLY.

---

6. This is a second reason why Bankers Trust is not a holder in due course. The instrument is not negotiable if it is not payable to order or to bearer, and there can be no holder in due course of such an instrument. [N.Y.U.C.C. § 3–805].